WILLIAM P. TEUSCHER *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF WESTPORT

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 7, 1966—decided March 30, 1967

*Colin Gunn,* with whom was *Edward E. Garlick,* for the appellant (plaintiff).

*Edwin K. Dimes,* for the appellee (defendant).

RYAN, J. On January 17, 1947, the plaintiff acquired title to a parcel of land containing about twenty-two acres in the town of Westport. The property was previously owned by his mother from 1936 to 1940, and by his father from 1940 to 1947. It is in a residence A zone with a minimum lot size of one-half acre. While the land was owned by his mother and father, small quantities of gravel and fill were sold from it. The plaintiff continued the sale of gravel from these premises until about November 20, 1963, with the possible exception of the years 1956 and 1957. The sale of gravel during these two years is disputed by the defendant. On November 7, 1963, the Westport zoning enforcement officer served an order of cease and desist on the plaintiff to prohibit him from selling and removing gravel from his property without a permit. Despite the order, the gravel removal continued at the site, and, on November 18, 1963, the Westport planning and zoning commission certified to the zoning board of appeals that the continuance of the gravel removal had created an imminent peril to life and

property. From the zoning officer's order to cease and desist, the plaintiff appealed to the defendant zoning board of appeals, claiming that the officer erred because the gravel operation was a legal, nonconforming use which existed prior to February 16, 1953, the date of the adoption of the Westport planning and zoning commission regulations concerning removal of gravel. On January 8, 1964, a lengthy public hearing was held. On January 17, 1964, the defendant denied the plaintiff's appeal by a vote of three in favor of the plaintiff's appeal and two against.[1] The plaintiff then appealed to the Court of Common Pleas, seeking a reversal of the decision of the zoning board of appeals on the ground that its action was illegal, arbitrary and in abuse of its discretion. The trial court rendered judgment dismissing the appeal, and the plaintiff has appealed to this court.

The plaintiff urges that the mining of gravel was not regulated or prohibited by the town of Westport prior to the enactment of the gravel removal ordinance on February 16, 1953; that prior to that time he had acquired a vested, valid, nonconforming right to continue the mining of gravel; that he did so continue to the date of the issuance of the cease and desist order; and that the planning and zoning commission may not impose a time limit on the plaintiff's exercise of his nonconforming right to mine and sell gravel. The defendant disputes the plaintiff's claim of a nonconforming use since, in order to acquire that status, the use must have been lawful when the zoning ordinance was first adopted

---

[1] "[Westport Zoning Regs., c. 10 § 3 (E) (1965).] . . . Four (4) members shall constitute a quorum of said Board of Appeals and the concurring vote of four (4) members of said Board shall be necessary to reverse any order, requirement or decision of any administrative official or to adopt any resolution or decision."

in 1930. The Westport zoning ordinance is now, and since its inception in 1930 has been, so written as to permit only those uses specifically authorized in each zoning district. Uses not specifically authorized are prohibited. The mining of gravel was never a permitted use in any zoning district. The defendant claims that there was no evidence offered to show that the plaintiff's gravel removal operation existed prior to 1930, and, consequently, that there could be no valid nonconforming use. In addition thereto, the defendant takes the position that, even if the plaintiff did have a nonconforming use, he would still be subject to the regulations concerning gravel removal and would be obliged to apply for and obtain a permit.

Chapter 8 of the planning and zoning regulations of the town of Westport provides, in part: "In the Town of Westport, there shall be no excavation or removal of earth, loam, topsoil, sand, gravel, clay, stone or soil for sale or use other than on the premises on which such excavation or removal shall be made, provided, however, that the Planning and Zoning Commission may grant permission authorizing such excavation or removal in accordance with the provisions hereinafter set forth." Chapter 8, § A, then sets forth the application fee, the necessity for a written application, the requirement of maps and plans to be submitted, and the required details of such maps and plans. Section B requires that public notice be given. Section C provides for a public hearing and that "the Commission, in considering and reviewing the application and in arriving at its decision, shall be guided and shall take into consideration the public health, safety and general welfare, its general plan of development for the municipality, and the following factors: (1) Soil

erosion by water and wind; (2) Drainage; (3) Soil fertility; (4) Lateral support slopes and grades of abutting streets and lands; (5) Land values and uses; (6) Such other factors as may bear upon or relate to the coordinate, adjusted and harmonious physical development of the Town of Westport." Section D provides that "[t]he Commission may grant . . . permission [for excavation or removal of gravel] for a limited period of time not exceeding two (2) years . . . . The Commission may grant extensions of time within which to complete the proposed work when it is demonstrated that the proposed work could not reasonably have been completed within the time originally allocated for reasons beyond the control of the permittee and provided further that the extension shall not exceed one year." Section E then sets forth in considerable detail the conditions upon which such permission shall be granted.

The plaintiff refused to apply for a permit to mine gravel and claimed that the planning and zoning commission may not impose a time limit on his right to mine and sell gravel and that any attempt to do so would be in violation of the fifth amendment of the United States constitution and article first of the constitution of Connecticut. He also claimed that he had a legal, vested, nonconforming use with which the commission had no right to interfere. The plaintiff does not dispute the authority of the planning and zoning commission to adopt the gravel regulations. His claim is that the regulations are invalid and unconstitutional in their application to him.

In a case where the defendant had been mining sand and gravel continuously since 1927, the town of Hempstead, New York, amended its ordinance

regulating such excavations so as to prohibit any excavating below the water table. Although this concededly prohibited the beneficial use to which the property had previously been devoted, the court held that the depth limitation was not so onerous or unreasonable as to result in a taking of property without due process of law in violation of the fourteenth amendment. *Goldblatt* v. *Hempstead,* 369 U.S. 590, 82 S. Ct. 987, 8 L. Ed. 2d 130. The denial of a landowner's application for permission to remove gravel, despite its willingness to submit to any reasonable regulations which the council might impose, did not make an ordinance invalid in its application to the landowner's situation. *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 617, 124 A.2d 881. A zoning law which prevented the defendant from removing sand and gravel from his land in a residence A district was held to be a reasonable regulation of the use of property in the public interest and not an arbitrary interference with property rights. *Seekonk* v. *John J. McHale & Sons, Inc.,* 325 Mass. 271, 274, 90 N.E.2d 325. Protection of a residential countryside against huge gravel pits is not unreasonable. *Burlington* v. *Dunn,* 318 Mass. 216, 221, 61 N.E.2d 243, cert. denied, 326 U.S. 739, 66 S. Ct. 51, 90 L. Ed. 441. A zoning ordinance prohibiting rock and gravel operations is constitutional. *Consolidated Rock Products Co.* v. *Los Angeles,* 57 Cal. 2d 515, 529, 370 P.2d 342. Surface mining, or the surface activities of mining, may be restrained by zoning ordinances and injunctive relief granted thereunder where reasonably related to the good and welfare of the immediate community. *Marblehead Land Co.* v. *Los Angeles,* 47 F.2d 528, 532 (9th Cir.), cert. denied, 284 U.S. 634, 52 S. Ct. 18, 76 L. Ed. 540; *West Bros. Brick Co.* v.

*Alexandria,* 169 Va. 271, 284, 192 S.E. 881, appeal dismissed, 302 U.S. 658, 58 S. Ct. 369, 82 L. Ed. 508; *Beverly Oil Co.* v. *Los Angeles,* 40 Cal. 2d 552, 558, 254 P.2d 865; *People* v. *Calvar Corporation,* 286 N.Y. 419, 420, 36 N.E.2d 644.

Whether the gravel pit was or was not a non-conforming use is not controlling in the present case, nor is it necessary for us to decide the plaintiff's claim of a nonconforming use. Even if the ordinance restricts a beneficial use to which the property had previously been devoted, this is not decisive on the question of the constitutionality of the ordinance. "If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional. *Walls* v. *Midland Carbon Co.,* 254 U.S. 300 [41 S. Ct. 118, 65 L. Ed. 276] (1920); *Hadacheck* v. *Sebastian,* 239 U.S. 394 [36 S. Ct. 143, 60 L. Ed. 348] (1915); *Reinman* v. *Little Rock,* 237 U.S. 171 [35 S. Ct. 511, 59 L. Ed. 900] (1915); *Mugler* v. *Kansas,* 123 U.S. 623 [8 S. Ct. 273, 31 L. Ed. 205] (1887); see *Laurel Hill Cemetery* v. *San Francisco,* 216 U.S. 358 [30 S. Ct. 301, 54 L. Ed. 15] (1910)." *Goldblatt* v. *Hempstead,* supra, 592.

The next question to determine is whether the regulations in the instant case are a valid exercise of the police power. There was evidence produced at the hearing that the gravel removal operation on the plaintiff's property was conducted in a haphazard fashion which posed a threat to the property involved and to the surrounding property. It had produced sharp declivities in the landscape, and the land lacked adequate drainage. Topsoil had been removed from the site instead of being saved to respread and refertilize the land on completion of

the gravel removal as required by the ordinance. During moderate rain, Imperial Avenue, an adjoining street, was flooded heavily as the result of drainage from the plaintiff's property, and the structure of the road was in jeopardy. The operation had been conducted without regard to the regulation of truck traffic.

"It is unquestionably true that any regulation, under the police power, for the use of property must have a reasonable relation to the public health, safety and welfare and must operate in a manner which is not arbitrary, destructive or confiscatory. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 671, 103 A.2d 535; *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 529, 107 A.2d 403; *Gionfriddo* v. *Windsor,* 137 Conn. 701, 704, 81 A.2d 266." *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 616, 124 A.2d 881. The Westport ordinance obviously was enacted for the purpose of regulating the removal of earth, loam, topsoil, sand, gravel, clay, stone or soil and to prevent and control the unsightly and dangerous conditions which are common in such operations and which are detrimental to the safety, health and welfare of the community and the protection of property. The regulations come under the police power of the state which permits the regulation of any business or the use of any property in the interest of the public welfare or the public convenience, provided it is done reasonably. *State* v. *Bassett,* 100 Conn. 430, 432, 123 A. 842. "To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the

purpose, and not unduly oppressive upon individuals." *Lawton* v. *Steele,* 152 U.S. 133, 137, 14 S. Ct. 499, 38 L. Ed. 385. "What local conditions require and the method of meeting those requirements are primarily matters of legislative concern. Courts can interfere only when the measures taken do not serve the public health, safety or welfare or are arbitrary and unreasonable. *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 703, 155 A.2d 754; *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327; *Leach* v. *Florkowsky,* 145 Conn. 490, 494, 144 A.2d 334. 'When a question of constitutionality is raised, the court presumes validity and sustains the legislation unless it clearly violates constitutional principles.' *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477; *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599. The plaintiffs have the burden of overcoming this presumption. *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514, 115 A.2d 435; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 303, 40 A.2d 177. The validity of the legislation must be tested by its effect upon the plaintiffs under the facts of this case and not under some other circumstances. *Pierce* v. *Albanese,* . . . [144 Conn. 241, 251, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21]; *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112." *Karen* v. *East Haddam,* 146 Conn. 720, 726, 727, 155 A.2d 921.

The ordinance merely requires that the plaintiff, as well as any other landowner in any zoning district in the town, must apply for a permit and comply with certain requirements in order to mine gravel and other earth products. It contains adequate standards for the guidance of the authority issuing the permit. The plaintiff's objection, that a two-year limitation for such a permit with a one-

year extension is unreasonable as applied to him, finds no support in the record. There is no evidence to indicate what the effect of such a time limitation would be with reference to mining gravel on his land. He has not sustained his burden of proof that the ordinance is discriminatory and therefore unconstitutional. We conclude that the ordinance is a proper exercise of the police power and constitutionally valid.

There is no error.

In this opinion the other judges concurred.