ZONING COMMISSION OF THE TOWN OF GROTON *v.*
DANIEL TARASEVICH ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued April 6—decided June 5, 1973

*A. A. Washton,* for the appellants (defendants).
*James T. Haviland II,* for the appellee (plaintiff).

SHAPIRO, J.   This action was commenced by the plaintiff, the zoning commission of the town of Groton, hereinafter called the commission, seeking to enjoin the defendants, Leona and Daniel Tarasevich, from operating their mobile home park, Dan's Trailer Park, without a license and in violation of the zoning regulations of the town of Groton.[1] The commission also sought to assess a penalty for each day of operation beyond the date of an injunction. The court found the issues in favor of the commission on February 19, 1971, and granted the requested relief, including a penalty assessment of $50 for each day of operation beyond the date of the injunction.  The defendants have appealed.

The pertinent facts are as follows: The defendant Daniel Tarasevich established a trailer park in Groton in 1952.  The trailer park was expanded to nine mobile-home sites by the end of 1956.  All nine sites were in existence prior to the adoption of zoning in the town of Groton and thereafter their use

---

[1] Ordinance No. 56, entitled "An Ordinance Regulating and Licensing Mobile Home Parks, Mobile Homes and Travel Trailers," was adopted by the commission on December 1, 1965, with an effective date of January 7, 1966.  While it provides in § 12.2.1 that "[n]o person shall maintain or operate a trailer park in the Town of Groton," § 12.2.2 permits the continuance of mobile home parks and trailer parks in existence at the time of the adoption of zoning regulations as a nonconforming use provided that certain requirements, including a license, are fulfilled under the terms of § 12.3.

was nonconforming. By quitclaim deed dated and recorded on July 31, 1963, the named defendant conveyed title to the land on which the mobile home sites were located to his wife, the defendant Leona Tarasevich. On November 17, 1965, prior to the enactment of Ordinance No. 56, the named defendant submitted a site plan to the commission. This site plan was filed with reference to a waiver provision under the proposed Ordinance No. 56, § 12.3.3 of which allowed the commission to waive certain requirements for a license if the owner had submitted a site plan of his park and had it approved by the commission prior to the effective date of the ordinance. On submitting the site plan, the named defendant agreed before and with the commission to remove from lot one the mobile home which was located on a fifty-foot right-of-way to a more suitable site, the latter being designated on the defendant's site plan as lot 1-A.[2] The site plan, which reflected the new lot 1-A, was approved. Because of this approval, the defendants were exempted from complying with the provisions of Ordinance No. 56 which require a public hearing, applications for a license, submission of a detailed site plan, certificates from the director of health and the building inspector, proof of ownership and a hearing fee. Instead, they were issued a conditional license on June 29, 1966, for the period from July 1, 1966, to September 1, 1967, pursuant to the provision of the ordinance which allowed the commission to waive these requirements on approving a submitted site plan. This license was issued on the aforementioned con-

[2] The finding of the court refers to an agreement both to relocate the trailer unit located on lot one as well as to relocate (the site of) lot one. It is clear from the supporting evidence printed in the commission's appendix that the condition or agreement referred only to relocation of the trailer unit located on lot one.

dition that the trailer unit on lot one would be removed in accordance with the approved site plan. Although the license on its face bore no notation, the defendants admitted that the license was in fact issued upon this condition.

The defendants failed to comply with the relocation condition and to date have not complied. On August 6, 1966, the zoning enforcement officer reported to the commission the failure of the defendants to relocate the mobile home on lot one and the officer was directed to issue a cease and desist order. The defendants were notified by mail to abate the violation within ten days by removing the mobile home from lot one. On January 4, 1967, the commission directed a notice to be sent to the defendants that the license issued to Dan's Trailer Park would be revoked as of February 1, 1967, for their failure to comply with the condition attached to the issuance of the license. After this notice was sent, the defendants at their request were given an opportunity to be heard at a meeting on February 1, 1967, at which time they requested further time to relocate. As a result of this request the commission tabled the matter for one month. On April 7, 1967, the zoning enforcement officer notified the defendants that the license of Dan's Trailer Park would be revoked as of April 10, 1967, because of violations of Ordinance No. 56, and the license was so revoked. It is not disputed that because of the defendants' failure to remove the trailer unit from lot one there was no longer an approved site plan for Dan's Trailer Park as required by the provisions of Ordinance No. 56. The defendants took no further action to comply with Ordinance No. 56 and have continued to operate Dan's Trailer Park without a license since April 10, 1967, the date of revocation.

Under the provisions of Ordinance No. 56 requiring annual renewals as of September 1, 1967, and thereafter, the defendants had no license to operate their mobile home park in the town of Groton nor have they since made application for a license.[3]

The defendants have assigned numerous errors and have sought corrections in the finding. None of the corrections to which they are entitled, however, would change the result or be material to the very simple issue before us.[4] The defendants do not attack and therefore concede as true the finding of facts as we have recited them above. What they claim, essentially, is that they are excused from compliance with the ordinance provisions respecting submission and approval of a site plan because those provisions do not contain sufficiently definite standards to govern the exercise of the licensing power.

The defendants do not deny that they never made an application for a license, or for the renewal or the extension of the original license. The only effort of compliance with the ordinance was the submission of a mythical site plan in which lot one was non-

---

[3] Some question has been raised at trial and on appeal by the defendants regarding the authority of Daniel Tarasevich to represent Leona Tarasevich, the record owner of the trailer park property, in submitting the site plan and in obtaining the license. Whether Daniel Tarasevich was her agent in these transactions is, however, immaterial in view of the conceded fact that no license has been sought and no license application made since the revocation of the license on April 10, 1967.

[4] The court found that the mobile home unit on lot one was located within a fifty-foot right-of-way entrance to the trailer park and that the zoning commission deemed this condition hazardous. Although the defendants have no quarrel with this finding, they claim there is no support for the court's conclusion that the trailer situated on lot one was in fact a hazard to traffic. Whether a hazard existed on lot one is, however, irrelevant to the issue before us, namely, whether the court correctly concluded that the operation of Dan's Trailer Park without a license violated Ordinance No. 56.

existent. After revocation of the provisionally-issued license, it was incumbent on the defendants to make application for a license and to satisfy the ordinance's requirements, discussed above, including certificates from the director of health and the building inspector, proof of ownership and the public hearing fee. The defendants do not claim that they have a meritorious defense on account of the commission's approval of that site plan.[5] Rather, the thrust of their claim on appeal goes something like this: It is conceivable that the commission could refuse to issue a license to the defendants or to approve a site plan accurately reflecting the location of their mobile home sites because the relevant provisions of § 12 of the ordinance state that the commission "may" issue a license on the fulfillment of specific requirements. Because the ordinance speaks in terms of "may" rather than "shall," the defend-

---

[5] The defendants seem to urge in their brief that certain language in those sections of the ordinance which govern site plan approval and licensing is too vague and renders the ordinance void on its face. By this argument, they seek to circumvent their lack of standing to challenge the application of the licensing provisions as to them. This they cannot do. We are not here confronted with a licensing ordinance which on its face threatens the exercise of a fundamental right. See *Lovell* v. *Griffin*, 303 U.S. 444, 58 S. Ct. 666, 82 L. Ed. 949. In the *Lovell* case, the Supreme Court held that the first amendment invalidated an ordinance which on its face made criminal distributing literature in any manner without a license. The appellant, who had not sought a permit to distribute religious literature was, the court held, excused from seeking the permit and entitled to contest the validity of the ordinance in answer to the charge against her. Here, in contrast, the subject matter of the licensing regulation—commercial operation of a trailer park—is one which a zoning commission might lawfully prohibit in toto. *Jensen's, Inc.* v. *Plainville*, 146 Conn. 311, 314, 150 A.2d 297. Its claimed literal vagueness is not subject to the kind of attack which succeeded in the *Lovell* case, primarily because the existence of such an ordinance as in the *Lovell* case posed a threat to the exercise of a fundamental right regardless of whether the ordinance was applied.

ants claim that the commission could operate according to its own unbridled discretion and, in theory, refuse to issue a license to them.

The plain answer to this claim is that the defendants have not at any time since the revocation of their license made application for a license under the provisions of Ordinance No. 56. The defendants are, as the court correctly concluded, in no position to claim that the provisions of the ordinance which govern licensing have been unconstitutionally applied to them. It is elementary in our jurisprudence that this court will not consider academic questions. "Law suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case." *Lomas & Nettleton Co.* v. *Waterbury*, 122 Conn. 228, 234, 188 A. 433. The undisputed facts here are that the defendants by their inaction acquiesced in the revocation of their license; on revocation, the continued operation of Dan's Trailer Park without a license violated Ordinance No. 56. The only provision of the ordinance which affects these defendants is the section which forbids the operation of a mobile home park without a license. In this respect, they differ from the would-be licensee in *Keating* v. *Patterson*, 132 Conn. 210, 43 A.2d 659. In the *Keating* case this court struck down as unconstitutionally vague a licensing ordinance which in effect gave an administrative board power to grant or withhold certificates of approval according to its unregulated discretion. The aggrieved party in the *Keating* case, however, had filed his application, had been denied approval and had brought the question of the vagueness of the ordinance properly before the court; in effect, the plaintiff's harm in the *Keating* case was the direct result of the board's unbridled and dis-

cretionary licensing powers. In contrast, the only constitutional claim which, on the facts here, might have been presented by these defendants would involve the constitutionality of prohibiting the operation of a trailer park without a license. That question, however, has not been raised here and in fact is one which this court has resolved in *Hartland* v. *Jensen's, Inc.*, 146 Conn. 697, 155 A.2d 754. See also *Goldblatt* v. *Hempstead*, 369 U.S. 590, 82 S. Ct. 987, 8 L. Ed. 2d 130; note, 150 A.L.R. 853. The mere possibility that, had the defendants applied for a license, the commission might arbitrarily have denied their application does not put before us the issue of the validity of the regulations. The validity of these provisions must be tested by their effect on the defendants under the facts of this case and not under some other circumstances. *Teuscher* v. *Zoning Board of Appeals*, 154 Conn. 650, 659, 228 A.2d 518; *Karen* v. *East Haddam*, 146 Conn. 720, 726, 727, 155 A.2d 921; *Pierce* v. *Albanese*, 144 Conn. 241, 251, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. The defendants' fear that the ordinance may be arbitrarily applied has no more foundation in reality than has their fictitious site plan.

There is no error.

In this opinion HOUSE, C. J., MacDONALD and BOGDANSKI, Js., concurred.

LOISELLE, J. (concurring). I concur in the result. I do not agree, however, that the defendants lack standing to challenge the constitutionality of the licensing ordinance and I believe that the court should have addressed itself to this claim.

The majority opinion adopts the view that the defendants may not be heard to attack the constitu-

tionality of the ordinance since they have not applied for a license and have not had an application refused. The defendants' license previously issued was revoked and from the history of this litigation it may be reasonably concluded that an application for a license would now be a futile act. "Such a useless course is unnecessary." *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 314, 197 A.2d 770; *Corsino* v. *Grover,* 148 Conn. 299, 308, 170 A.2d 267. In *Teuscher* v. *Zoning Board of Appeals,* 154 Conn. 650, 228 A.2d 518, the refusal of the appellant to seek a permit to mine sand and gravel did not compel this court to refuse to review the appellant's claim that the ordinance requiring such a permit was unconstitutional. In fact, this court has questioned the propriety of attacking the constitutionality of a statute after an application for a license under the attacked statute has been made. *Cyphers* v. *Allyn,* 142 Conn. 699, 702, 118 A.2d 318; *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 673, 88 A.2d 388; *Strain* v. *Zoning Board of Appeals,* 137 Conn. 36, 38, 74 A.2d 462. It is noteworthy that the opinion in *Keating* v. *Patterson,* 132 Conn. 210, 215, 43 A.2d 659, relied on in the majority opinion for the proposition that an application must be made before the ordinance can be attacked, specifically mentions the fact that the question of whether the issue of constitutionality was properly presented was not questioned either in the trial court or in this court.

With regard to the constitutionality of the attacked ordinance, a lengthy discussion of the matter is unnecessary since the standards and provisions of the ordinance meet the test of constitutionality. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586.