**PLAZA MOBILE AND MODULAR HOMES, INC., S. Richard Amici, and Joseph F. Caccamo**

v.

**TOWN of COLCHESTER.**

Civ. No. H–82–979(MJB).

United States District Court, D. Connecticut.

March 20, 1986.

Frederick D. Augernstern, Robert L. Hirtle, Jr., Rogin, Nassau, Caplan, Lassman, and Hirtle, Hartford, Conn., for plaintiff.

John Butts, Joseph A. Broder, Broder & Butts, Colchester, Conn., Eric W. Wiechmann, Cummings & Lockwood, Hartford, Conn., for defendant.

BLUMENFELD, Senior District Judge.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case presents the issue of the application of the "state action" exemption of the Sherman Antitrust Act to a local government's decision to amend its zoning regulations.

### I.

On March 17, 1982 representatives of Plaza Mobile and Modular Homes ("Plaza Mobile"), a land development company and a plaintiff herein, presented to the Zoning Commission of the Town of Colchester, Connecticut (the "Town") a preliminary plan to construct a mobile home park on a tract of land Plaza Mobile had recently purchased in the Town. That same evening the Zoning Commission also considered a separate mobile home park proposal submitted by a Mr. Anthony Pinto for land he owned in Colchester. Under the Commission's zoning regulations then in effect, the Commission had the power to grant applicants a "special exception" to allow for mobile home park development. Only one such exception had been granted previously. That evening the Commission took no formal action on either of the new proposals.

At the next regularly scheduled meeting on April 14, 1982, the Commission again took up the question of mobile home park development. Instead of focusing on either of the new proposals, Commission members debated the merits of further mobile home development in Colchester generally. Several Commission members expressed concern for the potential for overdevelopment of these parks, and proposed a deletion of those sections of the zoning regulations that permitted such development. Action on the proposed amendment in the regulations was deferred until the next meeting, when a public hearing on the amendment was scheduled. The public hearing was properly noticed and scheduled for May 5, 1982, to coincide with the next Commission meeting.

On May 5, the Commission met again. The first order of business was Anthony Pinto's development proposal. With little debate the Commission formally approved the Pinto proposal. The Commission then called to order and presided over the public hearing, which considered the proposed change in the zoning regulations. A number of persons spoke against the proposed moratorium on further mobile home development. Following the hearing the Commission reconvened and shortly thereafter voted to amend the regulations to create a moratorium on mobile home park development, to take effect one week thereafter. The Plaza Mobile proposal was not considered by the Commission at the May 5 meeting, or thereafter.[1]

Plaza Mobile has brought suit in this court under sections 4 and 16 of the Clayton Antitrust Act, claiming that the Town of Colchester, the sole defendant herein, acting through its Zoning Commission, had

---

1. Plaza Mobile contends that in failing to approve its application for a mobile home park exception to the zoning regulations, the Town of Colchester engaged in a "conspiracy" to restrain trade in violation of the Sherman Act. *Cf. Fisher v. City of Berkeley,* — U.S. —, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) (a municipal rent control ordinance enacted pursuant to popular initiative is not a per se violation of section 1 of the Sherman Act because ordinance unilaterally imposed by municipality lacked "concerted action" necessary to constitute a conspiracy in restraint of trade). Whatever the merits of the conspiracy claim, the specific action complained of here is the Zoning Commission's decision to amend its regulations to eliminate the special exception for mobile home park devel-

opment. This amendment had the immediate effect of preventing further mobile home park development in the Town, including that proposed by Plaza Mobile. Thus, the "kind of action complained of" for purposes of a "state action" analysis under the *Parker* doctrine was the Zoning Commission's decision to prevent further mobile home park development in the Town of Colchester. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24 (1985); *see also Montauk-Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 95–97 (2d Cir.1986) (holding immune under "state action" doctrine a municipality's action of refusing to allow plaintiff to serve as an air carrier on a year-round basis at municipal airport).

conspired with members of the Commission and certain private individuals to restrain trade by approving the mobile home park moratorium, thereby preventing Plaza Mobile from developing its park, all in violation of section 1 of the Sherman Act. 15 U.S.C. §§ 1, 15, 26.

Presently before this court is the Town's motion for summary judgment. The Town contends that the Zoning Commission's alleged anticompetitive acts are protected by the *Parker* doctrine's "state action" exemption to the antitrust laws. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The precise issue on this motion is whether the Town of Colchester is immune from action under the federal antitrust laws for any anticompetitive consequences of its Zoning Commission's decision to ban further mobile home park development in Colchester.[2]

## II.

The "state action" exemption to the antitrust laws originated in *Parker v. Brown,* where the Supreme Court held that the anticompetitive acts of a state legislature were exempt from the prohibitions of the Sherman Act. Relying on principles of federalism and state sovereignty the Court ruled that the Sherman Act was intended to prohibit private restraints on trade, but not intended to "nullify a state's control over its officers and agents in those activities directed by its legislature." *Id.* at 351, 63 S.Ct. at 313.

Subsequently, in *City of Lafayette v. Louisiana Power and Light Co.,* 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1979), the Court turned its attention to the anticompetitive activities of local government. The Court refused to hold that the "state action" exemption *automatically* extended to the acts of a municipality or other local government agency. To

qualify for an exemption the municipality would have to demonstrate that the anticompetitive activities were authorized by the state "pursuant to state policy to displace competition with regulation or monopoly public service." *Id.* at 413, 98 S.Ct. at 1136.

The scope of the local government exemption to the antitrust acts had gained further definition in two recent Supreme Court cases addressing the issue. In *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), and *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court reaffirmed an earlier suggestion in *City of Lafayette,* 435 U.S. at 410, 98 S.Ct. at 1135, that before a municipality will be entitled to the state action exemption it must demonstrate that it is engaging in the challenged conduct "in furtherance or implementation of clearly articulated and affirmatively expressed state policy." *City of Boulder,* 455 U.S. at 52, 102 S.Ct. at 841; *Town of Hallie,* 105 S.Ct. at 1719.

In *City of Boulder* the Court held that the state of Colorado's "home rule" amendment to its constitution, which conferred on municipal governments a general authority to govern local affairs, did not constitute a "clear articulation" of a state policy to authorize anticompetitive practices with respect to the regulation of cable television within the city. The City of Boulder had passed an ordinance which prohibited the city's sole cable television operator from expanding its operations for a period of three months. The operator sued the city under the antitrust laws. In rejecting the city's "state action" defense the Supreme Court stated that Colorado's "home rule" amendment expressed a position of "neutrality" respecting the city's ban on cable television extensions:

---

**2.** The Town of Colchester does not claim that the Local Government Immunity Act of 1984, 15 U.S.C. § 35, applies retroactively to this action, which was instituted in 1982. *See Montauk-Caribbean Airways, Inc.,* 784 F.2d at 93–95. Also, because this action is entirely resolved on the issue of a state action exemption to the antitrust

acts, it is unnecessary to determine whether the Zoning Commission's decision to prevent further mobile home park development is preempted by the Sherman Act as a violation thereof. *Compare, Fisher v. City of Berkeley,* —— U.S. ——, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986).

A State that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can those actions be truly described as "comprehended within the powers *granted*," since the term, "granted," necessarily implies an affirmative addressing of the subject by the State. The State did not do so here: The relationship of the State of Colorado to Boulder's moratorium ordinance is one of precise neutrality.

*City of Boulder*, 455 U.S. at 55, 102 S.Ct. at 842 (quoting *City of Lafayette*, 435 U.S. at 394, 415, 98 S.Ct. at 1127, 1138).

In *Town of Hallie*, the Court addressed the question of "how clearly a state policy must be articulated to establish that its anticompetitive activity constitutes state action." 105 S.Ct. at 1717. In that case, the City of Eau Claire had refused to allow neighboring unincorporated towns the use of its sewage treatment facilities, while concurrently offering the use of those facilities directly to the neighboring towns' residents in exchange for an agreement to have their homes annexed to the City of Eau Claire on a block-by-block basis. No other comparable facilities were available to the neighboring towns or their residents. The Court found that the Wisconsin state statutes expressly stated that a city could "by ordinance fix the limits of [sewage] service in unincorporated areas," and that a city, in certain situations, could condition its sewerage connections on annexation of the territory served. 105 S.Ct. at 1718. The Court concluded that "the statutes clearly contemplate that a city may engage in anticompetitive conduct":

> Such conduct is a foreseeable result of empowering the City to refuse to serve unannexed areas. It is not necessary, as the Towns contend, for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects. Applying the analysis of *City of Lafayette*, it is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate.

*Town of Hallie*, 105 S.Ct. at 1718 (citation omitted).

The Court easily distinguished the "home rule" amendment at issue in *City of Boulder*. While the Wisconsin statute "specifically authorized Wisconsin cities to provide sewage services" and "delegated express authority to take action that foreseeably" would result in anticompetitive consequences, *id.*, 105 S.Ct. at 1719, the "neutral" Colorado law "allocated only the most general authority to municipalities to govern local affairs." *Id.*, 105 S.Ct. at 1718–19.

Thus, to qualify a local government's conduct for a "state action" exemption, the state need not "explicitly" authorize the anticompetitive effects of that conduct. *Id.*, 105 S.Ct. at 1718. It is sufficient that the legislature "contemplated the kind of action complained of," *id.*, 105 S.Ct. at 1718; *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir.1986), and that the anticompetitive activities are a "foreseeable result" of the local government's actions. 105 S.Ct. at 1718; *see also La-Salle National Bank of Chicago v. Dupage County*, 777 F.2d 377, 381 (7th Cir. 1985).

### III.

#### A.

The Town of Colchester points to several provisions of the Connecticut statutes that it contends delegate to it specific authority to regulate and prohibit mobile home parks. Conn.Gen.Stat. § 8–1 authorizes a municipality to form a zoning commission and to exercise through it certain zoning powers granted in section 8–2. Section 8–2 contains a long list of traditional local zoning powers including the authority to regulate:

> within the limits of such municipality, the height, number of stories and size of buildings and other structures; the per-

centage of the area of the lot that may be occupied; ... [and] the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes.... Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. Section 8–2 further states that "such regulations" may provide that "certain classes or kinds of buildings, structures or use of land [will be] permitted only after obtaining a special permit or special exception from a zoning commission ... subject to standards set forth in the regulations and the conditions necessary to protect the public health, safety, convenience and property values."

The Town also refers to section 7–148 which provides in relevant part: "Any municipality shall have the power to ... regulate and provide for the housing of parked trailers when located off the public highways, and trailer parks or mobile home parks, except as otherwise provided by special act and except where there exists a local zoning commission so empowered...." Conn.Gen.Stat. § 7–148(c)(7)(A)(iv).

Reading these sections together there is no doubt that they "clearly articulate and affirmatively express" a state policy to permit municipalities to "regulate" the development of mobile home parks directly or through a zoning commission. The Town of Colchester, which is a "municipality" under Connecticut law, Conn.Gen.Stat. § 7–148(a), at its option formed a zoning commission pursuant to section 8–1 to exercise such powers.

It is just as clear that, in Connecticut, the power to "regulate" implies the power to entirely prohibit certain classes of development under local zoning laws. The Connecticut Supreme Court has held as much in interpreting earlier but similarly worded versions of section 8–2 and section 7–148. In *Hartland v. Jensen's, Inc.*, 146 Conn. 697, 701–03, 155 A.2d 754 (1959), the state supreme court held that municipalities are empowered to entirely prohibit permanent mobile home parks within their borders:

It is true that the town must rely upon the authority given by [section 7–148], which confers the power to regulate but not, in those terms, the power to prohibit. The power to regulate, however, entails a certain degree of prohibition.... The word "regulate" implies, when used in legislation, the bringing under the control of constituted authorities the subject to be regulated.... It infers limitations. The statute relating to zoning, now § 8–2 of the 1958 Revision, speaks of the power to regulate and not of the power to prohibit, but it cannot be denied that zoning regulations may in their operation result in prohibition under some circumstances.... In the case at bar, the legislative authority of the town properly could have determined that its geographical situation and its resources were such that temporary occupancy of land within its borders by trailers and mobile homes was feasible, but more or less permanent occupancy would overtax the abilities of the town to cope with the problems which would arise.

146 Conn. at 702–03, 155 A.2d 754 (citations omitted); *see also Zoning Commission v. Tarasevich*, 165 Conn. 86, 93, 328 A.2d 682 (1973); *Jensen's, Inc. v. Plainville*, 146 Conn. 311, 314, 150 A.2d 297 (1959); *Calve Bros. Co. v. Norwalk*, 143 Conn. 609, 617, 124 A.2d 881 (1956). It is beyond question that these authorities are "instructive on the question of the state legislature's intent" in enacting these statutes. *Town of Hallie*, 105 S.Ct. 1713, 1719 n. 8.

The history of zoning in the United States also lends strong support to the proposition that a "foreseeable result" of Connecticut's zoning enabling legislation is the complete prohibition of mobile home park development within a municipality. Since the beginning of zoning in this country courts have recognized the broad police

powers inherent in zoning and other land use laws. *Euclid v. Ambler,* 272 U.S. 365, 388–90, 47 S.Ct. 114, 118–19, 71 L.Ed. 303 (1926); *Hadacher v. Los Angeles,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915). In *State v. Hillman,* 110 Conn. 92, 147 A. 294 (1929), the court in discussing the breadth and scope of the then current zoning enabling legislation stated that courts "cannot be unmindful at all times that they are dealing with one of the most essential powers of government, one that is the least limitable." 110 Conn. at 106, 147 A. 294; *see also, Clark v. Town Council,* 145 Conn. 476, 144 A.2d 327 (1958). A " 'grant of zoning power necessarily reflects a state determination that regulation should displace market competition otherwise protected by antitrust laws.' " *La-Salle National Bank of Chicago v. Dupage County,* 777 F.2d at 383 (quoting Areeda, *Antitrust Laws* ¶ 212.7d at 69 (1982 Supp.).

B.

■ Plaza Mobile disputes that the Connecticut legislature has extended such broad and far-reaching powers to its municipalities to regulate mobile home parks. It points to section 65 of Title 21 of the Connecticut statutes, passed in 1972, which states that persons who wish "to maintain or operate a mobile home park within the limits of the state ... shall first obtain a license therefor [from the State of Connecticut Department of Consumer Protection]." Conn.Gen.Stat. § 21–65a. Plaza Mobile contends that this relatively recently passed section vests the state with all authority for mobile home park regulation, and entirely preempts any regulating power of the municipalities under sections 8–2 and 7–148. In support, Plaza Mobile claims that section 21–65a is a "special act" anticipated by section 7–148c which grants municipalities the power to "regulate and provide for the licensing of ... mobile home parks, *except as otherwise provided by special act....*" Conn.Gen.Stat. § 7–148(c)(7)(A)(iv) (emphasis added).

Plaza Mobile incorrectly interprets the statutes which extend mobile home park licensing authority to the state. Title 21 does not supplant the broad zoning powers previously extended to local municipalities with respect to mobile home parks. On the contrary, these sections expressly preserve existing municipal power by stating that "[e]ach mobile manufactured home park shall conform to the requirements of the state building code, fire safety code, *and local ordinances or planning and zoning regulations, if any....*" Conn.Gen.Stat. 21–68 (emphasis added). Thus, it is quite clear that Title 21 does not weaken the legislature's intention of extending to Connecticut's municipalities the power to regulate and prohibit mobile home parks. *See also, Daley v. Liquor Control Commission,* 166 Conn. 97, 101, 347 A.2d 69 (1975) (a court will not repeal or limit one statute by implication if two statutes in question can be read together consistently).

C.

■ Plaza Mobile also argues that since the Connecticut statutes merely "authorize" and do not "compel" the municipalities to exercise regulatory power over mobile home parks, there is consequently no "clear articulation and affirmative expression" of a state policy to permit such regulation. This argument has recently been expressly rejected by the Supreme Court in *Town of Hallie.* Addressing the Wisconsin statute which also simply "authorized" municipalities to engage in certain conduct, the Court stated: "Although compulsion affirmatively expressed may be the best evidence of state policy, it is by no means a prerequisite to a finding that a municipality acted pursuant to clearly articulated state policy." *Town of Hallie,* 105 S.Ct. at 1720; *see also, Cine 42nd Street Theater v. Nederlander Organization, Inc.,* 609 F.Supp. 113, 119 (S.D.N.Y.1985).

IV.

■ In this case the Town of Colchester has moved for summary judgment claiming that the state action immunity doctrine applies to its Zoning Commission's decision to amend its zoning regulations so as to place a moratorium on future mobile home park development within Town boundaries. The Town has identified relevant Connecticut

**146**

statutes which expressly authorize the Zoning Commission to "regulate" mobile home park development. In light of Connecticut Supreme Court interpretation of this legislation, and the far-reaching powers of zoning legislation in this country generally, the anticompetitive consequences of the Town's moratorium on mobile home park development was "clearly contemplated" by the legislature and was a "foreseeable result" of such legislation. *Town of Hallie*, 105 S.Ct. at 1718–19. In sum, the Town's alleged anticompetitive actions were taken pursuant to clearly articulated and affirmatively expressed state policy which "effectively replaced competition with regulation," as the *Parker* doctrine requires for municipal action. *Montauk-Caribbean Airways, Inc.*, 784 F.2d at 96; *Town of Hallie*, 105 S.Ct. at 1717. As such, the Town's decision to ban mobile home park development qualifies for an antitrust exemption.

Summary judgment for defendant is granted.

SO ORDERED.