[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Office of Consumer Counsel ("OCC"), from a final decision of the defendant, Connecticut Department of Public Utility Control ("DPUC"), approving the renewal of the cable television franchise of the defendant, CoxCom, Inc. doing business as Cox Communications Connecticut/Manchester ("Cox"). The appeal is taken pursuant to General Statutes §§ 16-35 and 4-183, the Uniform Administrative Procedure Act ("UAPA").
In accordance with General Statutes §§ 16-331 and 16-333 and §16-333-38 of the Regulations of Connecticut State Agencies, on April 17, 1998, Cox applied to the DPUC for renewal of its cable television franchise, providing service to customers in Glastonbury, Manchester, Newington, Rocky Hill, South Windsor and Wethersfield. as parties and the Cox Cable Advisory Council was designated as an intervenor by the DPUC. After holding hearings in the towns served by Cox and issuing a draft decision soliciting comments, the DPUC rendered its final decision on December 22, 1999, granting Cox a twelve year extension of its franchise.
A "key point of dissension among participants" before the DPUC regarded the funding by Cox of public/community access cable television. (ROR, Item XIII-1, p. 22.) Prior to its re-application, Cox had established a fully-equipped studio in Manchester at its main headquarters. In the outlying towns, Cox had also provided "limited funding, operational support and training" to studios located in Newington, Rocky Hill and Wethersfield staffed by volunteer access user groups. (ROR, Item XIII-1, p. 15.)
OCC, in the proceedings before the DPUC, maintained that these three "user group" studios were not receiving the same level of funding as was the Manchester studio, especially when the amount of equipment available and production capability was considered. Cox objected to any requirement that it "more equitably fund all four studios in the franchise CT Page 7844 area. . . . Cox strongly objects to any such requirement and notes that no other cable operator in the state is required to fund a multitude of studios." (ROR, Item XIII-1, p. 22.)
The argument of OCC on this point was rejected by the DPUC:
 [T]he Department maintains its position that community access funding for a cable franchise is a finite resource and must be allocated in such a way as to avoid unnecessary duplication of facilities. Cox's Manchester facility is a fully equipped access facility and is easily accessible to all subscribers in the franchise. The existence of three additional studios in this franchise is an added benefit available in few other franchises. Residents of Newington, Rocky Hill and Wethersfield are fortunate to have these local studios and Cox should endeavor to work closely with the towns and the User Groups to help them flourish in a renewed franchise term.
 The Department continues to expect the Company to encourage the formation of user groups but does not support the development of totally separate, autonomous groups with individual studios. . . .
(ROR, Item XIII-1, p. 23.)
The final decision also discussed the proposed cable access budget of Cox. OCC raised a variety of issues regarding the budget, such as whether sufficient funds were included in the capital equipment account and whether salaries of the community access employees should have been increased. (ROR, Item XIII-1, p. 28.)[1] The final decision stated: "It is also OCC's contention, as it has stated in other franchise renewal proceedings, that the funding proposal of $5.30 per subscriber per year reflects only operating expenses and that capital expenditures are to be funded outside of the per subscriber contribution pursuant to Conn. Gen. Stat. § 16-331a(k). OCC Brief, p. 15. The Department continues to disagree with this interpretation of the statute." (ROR, Item XIII-1, p. 28.)[2]
Subsequent to the final decision, OCC filed this appeal and the Cox Cable Advisory Council filed a separate appeal. See Cox Cable AdvisoryCouncil v. Dept. Public Utility Control, Superior Court, judicial district of New Britain, Docket No. 500103. On motions to dismiss, the court dismissed Cox Cable Advisory Council's appeal, Docket No. 500103, for failing to allege aggrievement. See Cox Cable Advisory Council v.CT Page 7845Dept. Public Utility Control, Superior Court, judicial district of New Britain, Docket No. 500103 (November 17, 2000, Cohn, J.). In the present case, the court denied the motion to dismiss as to OCC finding that OCC was aggrieved. See Office of Consumer Counsel v. Dept. of Public UtilityControl, Superior Court, judicial district of New Britain, Docket No. 500104 (November 17, 2000, Cohn, J.).
The court reviews this matter under the following standard:
 The standard of review of an agency decision is well established. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles. . . .
(Citations omitted; internal quotation marks omitted.) Office of ConsumerCounsel v. Dept. of Public Utility Control, 252 Conn. 115, 120 (2000).
On the record before it, the DPUC concluded that Cox had appropriately equipped the Manchester studio, in the new franchise should encourage the evolvement of the three studios in the outlying towns, but did not have to equalize expenditures amongst the four studios. OCC did not appeal from this portion of the final decision.
The only issue raised by OCC is whether the DPUC erred in apparently rejecting a source of funding for access cable television in General Statutes § 16-331 a(b) as well as § 16-331 a(k). All parties to this appeal agree that in setting the subscriber fee, the DPUC should take into account the adequacy of equipment and facilities to meet current and future access needs of the franchise. General Statutes §16-331 a(k)(5). OCC contends that § 16-331a(b), insuring "meaningful community access," gives the DPUC authority to require a franchisee, such as Cox, to make capital grants in addition to setting the subscriber fee in § 16-331a(k). OCC points to the DPUC decision in Applicationof TCI Cablevision of Central Connecticut/Vernon for Franchise Renewal, Docket No. 95-04-26 as upholding its position.[3]
CT Page 7846
The court cannot jurisdictionally resolve this issue on this record. The DPUC has made an uncontested finding that the Manchester studio meets the standards expected for cable access. The three outlying studios are to be supported by Cox, but the DPUC specifically stated that Cox did not have the duty to provide major expenditures. The capital funding sought by OCC at the Manchester studio was taken into account in the subscriber fee, also an issue not appealed by OCC.
The Supreme Court has cautioned that "[t]he validity of [challenged] provisions must be tested by their effect on the defendants under the facts of this case and not under some other circumstances. . . ." (Citations omitted.) Zoning Commission v. Tarasevich, 165 Conn. 86, 93
(1973). A decision on whether the DPUC has the authority which OCC seeks to press upon it should wait until an appropriate case arises. Here, the court's answer to OCC's contentions would be merely academic. BridgeportJai Alai, Inc. v. Gaming Policy Board, 3 Conn. App. 254, 256 (1985);Hudson House Condominium Assn. v. Brooks, 223 Conn. 610, 612, n. 2 (1992): "In the absence of an actual and existing controversy, for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal . . . (Citations omitted; internal quotation marks omitted.)
Therefore, the appeal is dismissed.
Henry S. Cohn, Judge