[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Southern New England Telephone Company ("SNET"), appeals from an April 11, 2001 final decision of the department of public utility control ("DPUC"), granting a certificate of public convenience and necessity to the city of Groton ("the city") to operate as a facilities-based provider of telecommunication services. This appeal is authorized by General Statutes §§ 16-35 and 4-183 of the Uniform Administrative Procedure Act ("UAPA"). CT Page 7677
General Statutes § 7-233ii[1] authorizes municipal utilities to apply to the DPUC under General Statutes § 16-247g for a certificate of public convenience and necessity to provide telecommunications service. The city first applied in March 2000 for a certificate of public convenience and necessity and then filed a revised application on September 22, 2000. (Return of Record ("ROR"), Items I-1, 1-2.)
The revised application, tracking the statute, sought the DPUC's "authority to serve as a competitive access provider, otherwise known as a `carrier's carrier' within the territorial limits of the area in which it is authorized to provide electric service." (ROR, Item I-2, p. 5.) The city requested the DPUC to issue a certificate of public convenience and necessity to build a 32 mile fiber optic ring within the city's electric service territory to offer telecommunications providers of local and intrastate interexchange telecommunications services access to dedicated, non-switching private line services. (ROR, Item I-2, p. 5.) The city does not intend to provide these services directly to consumers, but intends to build an infrastructure allowing other telecommunications providers the opportunity to offer local and toll services to Groton consumers. (ROR, Item V-2, Number 3.)
After a hearing before the DPUC, at which the city, SNET and the office of consumer counsel appeared as parties, the DPUC found on April 11, 2001, that the city "possesses and demonstrates adequate financial resources, managerial ability and technical competency to provide the proposed services." (ROR, Item XI-1, p. 7.) It concluded that the city's request to offer provider access to facilities-based access to telecommunications services in Connecticut "furthers the goals of Conn. Gen. Stat. § 16-247a (a) and is in the public interest. The Department hereby grants [the city's] request for a Certificate of Public Convenience and Necessity." (ROR, Item XI-1, p. 7.)
The DPUC ordered the city to file an annual report describing the status of its Connecticut operations, including the number of customers, the number of lines subscribed, its total intrastate revenues, the intrastate minutes of use on a total service basis, a description of physical changes to existing facilities for the next fiscal year, and any changes in the information previously filed with the DPUC. The city was also ordered to file prior to construction its capital/construction plans for review by the DPUC and the contracts for the fiber optic installation and maintenance. Finally, the city was ordered to install and repair its telecommunications facilities on utility poles only with competent contractors or carriers until demonstrating that its own employees were sufficiently certified. (ROR, Item XI-1, pp. 7, 8.) CT Page 7678
SNET has appealed from this final decision. On June 14, 2001, the DPUC filed a motion to dismiss SNET's administrative appeal on the ground of lack of aggrievement. On September 24, 2001, the court, Schuman J., denied this motion. On October 1, 2001, the court articulated his reasons for denial as follows: "The court denied the motion to dismiss because SNET's allegations are sufficient to show that there is a possibility that DPUC's actions will result in illegal competition in that the City of Groton, a competitor of the plaintiff. may now have authority to provide telecommunications service beyond the territorial limits permitted by § 7-233ii (a). See Light Rigging Co. v. DPUC, 219 Conn. 168, 177
(1991). See also Complaint ¶¶ 5, 7, 8, 9, 12, and 13. The remaining questions go to the merits." Both the DPUC and the city renewed a claim of the lack of aggrievement in their briefs, but the court declines to alter Judge Schuman's holding in the motion to dismiss. The court therefore concludes that aggrievement exists.
SNET's issues on appeal are drawn from the following contentions of the city in which the DPUC concurred: "The City acknowledges that the above noted statute [§ 7-233ii (a)] limits the provision of telecommunications service to municipalities authorized to provide electric services to the inhabitants of the area served by the municipality already. However, Groton notes that Conn. Gen. Stat. §7-233ii has no language prohibiting a municipality from offering wholesale telecommunications service. Groton further states it has already established a utility service record in Connecticut as the State's largest municipal electric utility and that it will seek the assistance of Nortel, Lucent, and other telecommunications industries in the provisioning of surveillance and monitoring of the proposed network." (Footnote omitted.) (ROR, Item XI-1, pp. 4-5.) In essence, the DPUC has approved the city's certificate of public convenience and necessity to develop a fiber optic network and to market this network to interexchange carriers, competitive local exchange carriers[2] and community antenna television service companies within its territorial limits.[3]
SNET makes two arguments. The first is that the DPUC erred in allowing the city to operate as a competitive access provider to business entities, such as the competitive local exchange carriers, because §7-233ii only allows a sale to natural persons. Second, SNET argues that even if the city may offer wholesale services to entities such as competitive local exchange carriers, the competitive local exchange carriers may only provide communication services to local customers.
The parties agree that the court must begin its analysis with statutory interpretation.[4] "In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the CT Page 7679 words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Doyle v.Metropolitan Property Casualty Ins. Co., 252 Conn. 79, 84, 743 A.2d 156
(2000)." (Internal quotation marks omitted.) Lisee v. Commission on HumanRights Opportunities, 258 Conn. 529, 536 (2001).
Addressing the first issue, in 1902 the General Assembly authorized "any municipality" to "construct, purchase, lease or establish, and maintain one or more plants for the manufacture and distribution of gas or electricity for furnishing light for municipal use and for the use of such of its inhabitants as may require and pay for the same." General Statutes (1902 Rev.) § 1978 [now General Statutes § 7-213]. The city has been offering electric service since 1905, ROR, Item XI-1, p. 5, and logically applied for the equivalent right to enter the telecommunications field.
Public Acts 1997, No. 97-313, codified as General Statutes § 7-233ii, was enacted to allow a municipality that operates plants for the distribution of electricity, to provide telecommunications services "to inhabitants within the territorial limits of the area in which the municipality is authorized to provide electric services." The legislative history indicates that this extension from electric power to telecommunications came about as part of the deregulation of the telecommunications industry. The legislature's intention in enacting the statute was to allow the municipal utilities "which provide electric services to also provide telecommunications services within their serviceterritory on the same basis and under the same requirements and restrictions as other competitive providers of telecommunications services." 40 H.R. Proc., Pt. 18, 1997 Sess., p. 6742 remarks of Representative Eberle, Chair, Energy and Technology Committee.
The legislature thus intended that a municipal utility's potential customers, whether for its long-standing electrical service or for its new telecommunications service, be identical. This clearly means that the municipality cannot sell power or telecommunications to corporations located outside its geographic limits. Toledo Edison Co. v. Bryan,737 N.E.2d 529 (Ohio, 2000) (interpreting a similar provision). This does not resolve, however, whether the municipal utility may market telecommunications to entities other than natural persons within its geographic limits. Here, General Statutes § 7-233ii authorizes the municipal utility to provide its service to "inhabitants." Thus, the issue as raised by SNET is whether the DPUC erred in allowing the city to provide its services to a competitive local exchange carrier or other entity because it is not an "inhabitant." CT Page 7680
SNET contends a non-natural person cannot be an "inhabitant." But this brightline approach is not supported in the cases, which hold that under certain circumstances a corporation or other business entity may be termed an "inhabitant." See 17 V. Braucher, Fletcher Cyclopedia of the Law of Private Corporations (Rev. Ed. 1998) § 8300: "Thus, generally speaking, a corporation is regarded as a "citizen," "resident," or "inhabitant," within the purview of those terms as used in statutes and constitutional provisions, whenever and to the extent that this becomes necessary to give full effect to the purpose and spirit of the statute or constitution, and the words thereof will permit such a construction. In other words, a foreign corporation may establish its business within a state in conformity with local laws as to justify treatment of the corporation as a "resident" for certain purposes, depending upon the context of the statute in which the term is used and the purpose and object to be attained." Accord Douglass v. Levi Strauss Co.,868 S.W.2d 70 (Ark. 1993); State v. Preferred Accident Insurance Co. ofNew York, 149 So.2d 632, 639 (La.App. 1963).
There are three reasons under the above-quoted test, that justify both the court's and the DPUC's conclusion[5] that an "inhabitant" includes more than natural persons in this instance. First, the city stipulated that it will not sell to any entity that does not establish a physical presence in its territory, City's Brief, p. 11, so that there is no possibility that a corporation or other entity outside of Groton will be provided service by the city. Second, as already indicated, the city has been providing electric service to nonnatural persons for many years, including Pfizer, Electric Boat and the United States Naval Submarine Base. (ROR, Item 1-2, p. 2.) The legislature intended, in extending the services that a municipal utility might provide, that the parties served were to be identical to its existing electrical service customers or potential customers.
Finally, the DPUC concluded that the city's "provision of service will serve the public interest by expanding the availability of quality telecommunications services in the state, by creating incentives for new providers and diversity of services and a more efficient use of an existing network, and by encouraging network deployment." The city's proposal "furthers the goals of Conn. Gen. Stat. § 16-247a (a) and is in the public interest." (ROR, Item XI-1, p. 5.) Thus, the court concludes that the DPUC correctly interpreted the term "inhabitant" to include more than "natural persons" as SNET argues.[6] Therefore, the city was properly authorized by the DPUC to sell to any "inhabitant," as interpreted to mean any entity or natural person having a fixed location in the city's geographical area. CT Page 7681
SNET's second issue is that even if the city may sell to competitive local exchange carriers, the competitive local exchange carriers may only resell to those persons residing in the city's geographical area. SNET argues that this must be the meaning of General Statutes § 7-233ii
or, as a competitor, it will be unfairly and illegally harmed. (SNET Brief, p. 18.) The record reveals, however, that SNET did not raise this issue before the DPUC. (See ROR, Item VII-1, Letter in Lieu of Brief) Therefore, the court cannot rule on this issue. "A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the [agency.]" Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 632 (1992).
There are "salutary goals" in requiring a party to raise all issues before the administrative agency, including "relieving the courts of the burden of deciding questions entrusted to an agency" and allowing the court to "have the benefit of the agency's findings and conclusions." (Internal quotation mark omitted.) Fish Unlimited v. Northeast UtilitiesService Co., 254 Conn. 1, 12-13 (2000). In addition, our Supreme Court has cautioned that "[t]he validity of [challenged] provisions must be tested by their effect on the defendants under the facts of this case and not under some other circumstances. . . . (Citations omitted.) ZoningCommission v. Tarasevich, 165 Conn. 86, 93 (1973).
Here, the city has not yet constructed the fiber optic ring, nor has a competitive local exchange cater or other entity been furnished telecommunications services under the provisions of the city's certificate of public convenience and necessity. The DPUC has ordered the city to file a thorough annual report on the service being provided. Under § 16-247g (g), the DPUC may hold additional hearings to determine whether a certificate of public convenience and necessity should be revoked as failing to meet the goal of supporting fair competition in the telecommunications industry. The second issue SNET sought to raise-an anti-competitive sale by a competitive local exchange cater outside the confines of Groton — certainly can be addressed in further proceedings before the DPUC.
The court concludes on the issues before it that the DPUC has not acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Therefore, SNET"s appeal is dismissed.
Henry S. Cohn, Judge