MAURICE LEVINSKY ET AL. v. ZONING COMMISSION
OF THE CITY OF BRIDGEPORT ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 4—decided December 11, 1956

*Austin K. Wolf,* with whom were *Martin F. Wolf* and, on the brief, *Herbert L. Cohen,* for the appellants (plaintiffs).

*Albert L. Coles,* with whom, on the brief, was *James J. O'Connell,* for the appellee (defendant Culhane).

*John V. Donnelly,* for the appellee (named defendant).

DALY, J. The plaintiffs appealed to the Court of Common Pleas from the action of the named defendant in changing the zoning of property located on Boston Avenue in Bridgeport. The court rendered judgment dismissing the appeal. The plaintiffs have appealed from that judgment.

The land in question, hereinafter referred to as the Fitch property, has a frontage of 569 feet on the north side of Boston Avenue commencing 171 feet easterly of Dean Place and extending easterly to within 385 feet of Noble Avenue. It has a depth of about 672 feet on its east side and about 495 feet on its west side. The northerly boundary runs about 455 feet from east to west. The property is bounded on the south by the north street line of Boston Avenue, on the west by properties located on the east side of Dean Place, on the north by a line about 210 feet south of and parallel to the south line of Hawthorne Street and on the east and northeast by the properties of Sooren Hovhannissian and the German Evangelical Lutheran St. Paul's Church. It has been in a business 1 zone for a depth of 100 feet since the adoption of zoning in Bridgeport in 1926. The remaining portion of it has been in a residence B zone. The defendant Frank J. Culhane procured an option to purchase the property and applied to the commission for a rezoning of the entire tract to business 3. He was acting for Food Fair Stores, Inc. It desires to erect a shopping center on the land at a cost of $500,000. Its plans provide for more than the required space for off-street parking.

On October 28, 1955, the commission changed the zoning of the entire tract to business 3 except for buffer strips fifty feet wide along its northerly boundary and twenty feet wide along its westerly boundary. In granting the application, the commis-

sion required the owner to agree to landscape the fifty-foot buffer strip and inclose it within a link wire fence and to agree that no entrance to or exit from the property is to be had on Hawthorne Street. The surface of the land at the easterly boundary is eight or ten feet below the surface of the land of the abutting owner. The applicant has agreed that a retaining wall will be erected on the easterly boundary along the rear of the church property, with a protective fence on the top of the wall.

Hawthorne Street, a residential street, is 700 or 800 feet long and runs west from Noble Avenue to Dean Place. The lots on the south side are in a residence A zone for a depth of 100 feet and in a residence B zone for the remaining depth. Each lot is about 200 feet deep and 60 feet wide. Some of them are bounded on the south by the Fitch property. Dean Place runs south from Hawthorne Street to Boston Avenue. There are six or seven houses on its east side. The lots on the east side are in a business 1 zone for a distance of 100 feet north from Boston Avenue, in a residence A zone for a distance of 100 feet south from Hawthorne Street, and in a residence B zone from a point 100 feet north of Boston Avenue to a point 100 feet south of Hawthorne Street. The land on the west side of Dean Place, except the 100 feet immediately south of Hawthorne Street, which is in a residence A zone, is zoned for light industrial uses, and at the present time is used for the conduct of various businesses. A large gasoline station is located on the northeast corner of the intersection of Dean Place and Boston Avenue. Between the gasoline station and the Fitch property are a music store and a diner. A commercial floor covering business uses the Hovhannissian property to a depth of approximately 152 feet. The

land on the south side of Boston Avenue, opposite the Fitch property, is zoned for business 1 for a depth of 100 feet and for light industrial uses in the rear. This land is used for business purposes. Boston Avenue is a part of route 1A. The plaintiffs' property, located on Noble Avenue adjoining the church property, does not abut on the Fitch property. Their property is bounded on the west by the Hovhannissian property.

The commission heard the interested parties. A large number of exhibits, including maps and photographs, were introduced in evidence at the hearing. The members of the commission visited the premises. In voting to grant the application, the commission, as required by the zoning regulations, stated upon its records the reasons for its action. Bridgeport Zoning Regs., c. 21, § 1 (1949). Two of the reasons stated are the following: "The Land Use Plan of the City of Bridgeport, as adopted by the Planning Commission on September 30, 1952, contemplates the establishment of local shopping centers along Boston Avenue and along East Main Street to the north of the subject property to serve residential neighborhoods 11 and 27, and is so shown on the plan. The specific locations of these local shopping areas are not designated but are left in the plan to the discretion of the Zoning Commission. Reference is made to this policy in the text of the plan and the Zoning Commission believes that this change of zone is fully within the concept of the basic principles set forth in the Introduction on Page 2 and is even more specifically recommended on Page 9, Paragraph 3 which discusses the very type of integrated shopping center planned upon the subject property. . . . The plan also contemplates a planned industrial area in the Pequonnock River Valley to the west,

northwest and southwest of the subject property and the Zoning Commission believes that, because of present development and trends, the east side of Dean Place abutting upon the said subject property is not now desirable residential property and will, in the future become a part of either the business area contemplated by this change of zone or the industrial area immediately to its west."

The appeal was presented to the trial court on the record of the hearing before the commission. The court visited the location in question with counsel. In their first assignment of error, the plaintiffs claim that the court erred in denying their request for a finding of facts. Since this assignment has not been pressed in their brief, we construe it as abandoned. *Somers* v. *Hill,* 143 Conn. 476, 480, 123 A.2d 468; Maltbie, Conn. App. Proc., § 165.

The plaintiffs contend that the action of the commission was in violation of the comprehensive plan, which, they say, is shown by the master plan of land use adopted by the city planning commission on September 30, 1952. In this claim the plaintiffs misconceive what is meant by a comprehensive plan. Section 837 of the General Statutes (as amended, Nov. 1955 Sup., § N10) authorized the zoning commission of each city, town or borough to regulate the use of buildings, structures and land for trade, industry, residence or other purposes and specified that such regulations should be made in accordance with a comprehensive plan. "The comprehensive plan to which § 837 refers may originate in either of two agencies. Chapter 45 of the General Statutes authorizes municipalities to create planning commissions. § 854. These commissions, when established, are empowered to prepare, adopt and amend plans of development for their respective com-

munities. § 856. No municipality is obliged, however, to establish a planning commission, and the statutory authority granted to towns, cities and boroughs under chapter 43 for the establishment of a zoning commission is not conditioned on a simultaneous exercise of the powers granted under chapter 45." *Couch* v. *Zoning Commission,* 141 Conn. 349, 354, 106 A.2d 173. The master plan adopted by a planning commission, however, is controlling only as to municipal improvements and the regulation of subdivisions of land. General Statutes § 857; Nov. 1955 Sup., § N12. Under the general law it does not control the zoning commission in its enactment of zoning regulations. When the zoning commission acts under the general law, the master plan is merely advisory. As to the use of various localities in a town for limited purposes, the function of the planning commission in adopting the master plan is simply to make recommendations. In the last analysis, therefore, the comprehensive plan in accordance with which zoning regulations are to be adopted is such a plan as the zoning commission devises.

Zoning regulations for Bridgeport were first adopted in 1926 and were thereafter amended and revised. Revised regulations adopted by the zoning commission on March 14, 1949, became effective on April 8, 1949. These regulations were made in accordance with a comprehensive plan which was in existence when the master plan of land use was adopted in 1952. It is stated in the master plan that it "is an *advisory,* rather than a *regulative,* instrument"; that, as such, it will be of aid to the zoning commission; and that it "will *not* be a final declaration of how the city is to develop." The specific locations of local shopping areas are not designated in the master plan but are left to the discretion of the

zoning commission. It is apparent from the statement of reasons given by the zoning commission for the change of zone involved in this case that before the commission voted the change it adopted, as a feature of the comprehensive plan for the zoning of the community, the recommendation in the master plan that areas be provided for shopping areas, and that the change of zone involved in this case was voted in accordance with that feature of the zoning comprehensive plan.

Another claim made by the plaintiffs is that the decision of the commission amounts to spot zoning. In *Bartram* v. *Zoning Commission,* 136 Conn. 89, 93, 68 A.2d 308, we said: "Action by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity is in general against sound public policy and obnoxious to the law. It can be justified only when it is done in furtherance of a general plan properly adopted for and designed to serve the best interests of the community as a whole. The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a plan. Where, however, in pursuance of [such a plan], a zoning commission takes such action, its decision can be assailed only on the ground that it abused the discretion vested in it by the law. To permit business in a small area within a residence zone may fall within the scope of such a plan, and to do so, unless it amounts to unreasonable or arbitrary action, is not unlawful." We said also (p. 94) that if the commission decides, "on facts affording a sufficient basis and in the exercise of a proper discretion, that it would serve the best interests of the community as a whole to permit a use of a single lot or small area in a different way

than was allowed in surrounding territory, it would not be guilty of spot zoning in any sense obnoxious to the law." We meant by that statement "to emphasize the fact that the controlling test must be, not the benefit to a particular individual or group of individuals, but the good of the community as a whole, and we did not mean in any way to derogate from our previous statement that any such change can only be made if it falls within the requirements of a comprehensive plan for the use and development of property in the municipality or a large part of it." *Kuehne* v. *Town Council,* 136 Conn. 452, 461, 72 A.2d 474. A comprehensive plan was in existence in the instant case and the decision of the commission was made in pursuance of that plan. If the commission's predominating purpose, in making such a change in accordance with the comprehensive plan, is to benefit the community as a whole rather than the owner of the land, its action is not unreasonable and arbitrary and does not constitute spot zoning, although the owner may receive an incidental benefit. We cannot say that, upon the record in this case, the commission's predominating purpose, in making the change, was not to benefit the community as a whole.

The plaintiffs also maintain that since there are two large food stores and a shopping center close by, the change of zone, permitting another shopping center, is not an appropriate use, in view of the character and value of the property in the neighborhood. "The history of zoning legislation indicates a clear intent on the part of the General Assembly that, subject to certain underlying principles, the solution of zoning questions is for the local agencies." *Couch* v. *Zoning Commission,* 141 Conn. 349, 359, 106 A.2d 173. The zoning authority is endowed with

a wide and liberal discretion. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746; *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668.· "The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538; *Couch* v. *Zoning Commission,* supra. "Courts must not and legally cannot substitute their own discretion for the wide and liberal discretion enjoyed by zoning agencies." *Couch* v. *Zoning Commission,* supra. It is manifest that the proximity of other businesses and the resulting benefit to those engaged in shopping in the neighborhood properly influenced the commission in reaching the decision that changing the zone of the land in question would be in furtherance of the comprehensive plan and would benefit the community as a whole.

There is no error.

In this opinion the other judges concurred.