## Everett A. Clark et al. v. Town Council of the Town of West Hartford et al.

Daly, C. J., Baldwin, King, Murphy and Mellitz, Js.

Argued June 6—decided July 24, 1958

*Peter B. Sullivan,* for the appellant (named plaintiff).

*Frederick U. Conard, Jr.,* for the appellee (defendant Five City Plaza, Inc.), with whom were *Maurice J. Sponzo,* corporation counsel, and, on the brief, *Samuel Freed,* assistant corporation counsel, for the appellees (named defendant et al.).

BALDWIN, J. The named plaintiff has appealed from a judgment of the Court of Common Pleas dismissing the plaintiffs' appeal from the action of the defendant town council of West Hartford in approving a change of zone of land of the defendant Five City Plaza, Inc., hereinafter referred to as the corporation. Its land is located on the southerly and easterly sides of New Britain Avenue as the avenue turns south at "Corbin's Corner" in the southwestern part of West Hartford near the town lines

of Newington and Farmington. The tract contains approximately thirty-seven acres, over three acres of which are already zoned for business. The remaining portion is zoned for residential purposes. The plaintiffs' properties are situated in adjacent areas zoned for residential purposes.

On March 8, 1956, the corporation petitioned the town plan and zoning commission for the approval of a subdivision development plan for a regional shopping center, and a map showing the proposed plan was submitted to the commission pursuant to § 15 of the zoning ordinance of the town. The commission held an extended public hearing, made modifications in the plan and imposed conditions upon the acceptance of it, all of which were noted upon the map submitted with the petition. On September 29, 1956, by a vote of three to one, with one member of the commission absent, it recommended approval of the plan as modified. In the course of its consideration of the plan, the commission had referred the question of the appropriate use of the land involved to the town development commission, and it had advised that the proposed development at the indicated location was "the best possible use for this land." The proceedings of the town plan and zoning commission show that a majority considered that the proposed use "was an appropriate use." They also record the commission's view that the traffic to and from the proposed shopping center would not place an undue burden upon local streets and that the opportunities for such a commercial development at other strategic locations in the town were lacking. The principal changes made by the commission were the elimination of a so-called tire and battery shop, which it felt would be a traffic hazard as well as unattractive in appearance, and

the reduction of the floor area of the proposed buildings. Changes were also made in the location of the access roadways and the control of the traffic thereon, in the interests of traffic safety. Maximum building heights were fixed to control the number of stories. It can be assumed that these changes were made in the interests of the surrounding residential properties. One member of the commission reported his dissent, in which he stated that the proposed development was not in accord with "a comprehensive plan for the general area involved."

On October 3, 1956, the written recommendations of the commission, together with the map of the subdivision development plan showing the changes made by the commission, were submitted to the town council. The plan as submitted called for a commercial development consisting of one two-story and two one-story buildings with a paved parking area to accommodate about 2500 automobiles. The buildings were intended to house a large department store, a supermarket, and smaller shops. Portions of the land bordering on neighboring properties were set apart as buffer strips. Provision was made for planting these strips with trees and shrubs to screen the commercial buildings and activities from view at the sides and rear. The town council, after lengthy public hearings and consideration, approved the plan by a roll call vote of five to two. The effect of this action was to create a special commercial zone subject to regulations peculiar to that zone.

The constitutional validity and the legality of the council's action under the statutes pertaining to zoning in West Hartford and under § 15 of its zoning ordinance are challenged. The council was both the legislative body and the zoning commission of the

town. *Sullivan* v. *Town Council,* 143 Conn. 280, 288, 121 A.2d 630. It derived its zoning powers from special legislation. 19 Spec. Laws 934, §§ 1-6; 20 id. 188; 22 id. 473, §§ 172, 173. This legislation gave it power to create zoning districts and to regulate the use of buildings and lands in those districts. It is specifically stated that "such regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district." 19 Spec. Laws 935, § 2. The following declaration of legislative policy and standards in the adoption of zoning regulations appears: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such town." Id., 935, § 3. The council was to provide for the manner in which regulations and zone boundaries were to be enforced and amended. 22 Spec. Laws 473, §§ 172, 173. The provisions of this special legislation closely parallel the general provisions relating to zoning contained in the General Statutes. General Statutes § 837, as amended, Nov. 1955 Sup., § N10. Special legislation also authorized the appointment of a town plan and zoning commission. 22 Spec.

Laws 470, § 157. The powers and duties of this commission included the power to "prepare and adopt plans for the redevelopment and improvement of districts or neighborhoods which, in its judgment, contain special problems or show a trend toward lower land values." 26 Spec. Laws 872, § 2; see 22 id. 470, §§ 158, 159.

The council, having previously zoned the town, adopted the present zoning ordinance on August 6, 1945, upon recommendation of the town plan and zoning commission. Section 15 of this ordinance, as amended on December 12, 1950, is set forth in the footnote.[1] It was by virtue of this section that the

---

[1] "Section 15. SUBDIVISION DEVELOPMENT PLAN. The owner or owners of any tract of land not less than 2 acres in area may submit to the Town Plan and Zoning Commission a complete development plan for such area showing proposed streets, building lines, parks, parking areas and/or other public or private permanent open spaces, together with a proposed building plan indicating lots for single family or two family houses or areas where group houses or apartment houses or buildings for uses permitted in a Business 1 District or any combination of them, are proposed to be built, except that theatres, movie houses, mortuaries and buildings which have public assembly as their principal purpose shall be prohibited. In cases involving dwellings, the building plan shall indicate for each lot or proposed building unit the maximum number of families that may be housed thereon and the minimum yard requirements. Such subdivision development plan if recommended by the Town Plan and Zoning Commission, and approved by the Town Council shall be construed to modify and supplement these regulations as related to the land included in such subdivision. In cases involving dwellings, the land area devoted to such dwellings shall have not less than the required area per family for the area district in which such subdivision is located, for each family which under such building plan may be housed in such subdivision. The 'land area devoted to dwellings' for the purpose of determining the maximum number of families to be allowed under such building plan shall be the total land area devoted to dwellings less the land area included in streets and plus an area equal to the area which is to be used as a park or other permanent open space and which in the judgment of the Town Plan and Zoning Commission is so located and controlled that it can be effectively used or enjoyed by all the residents of such subdivision. Except that

town plan and zoning commission recommended the plan for the development of the corporation's land at Corbin's Corner. The action of the council upon this recommendation is the subject of the present attack.

It is axiomatic that "all private property is held subject to the police power of the state." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 671, 103 A.2d 535. When and how that power will be exerted is for the legislative body to decide, and courts can interfere only where the action taken fails to serve a legitimate public purpose or interferes with private rights in an unreasonable, discriminatory or arbitrary fashion. *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477. Zoning legislation, be it statute or ordinance, to be constitutionally valid must serve some phase of the public health, safety, convenience or welfare in a reasonable, impartial and considerate way. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112; *State* v. *Hillman,* 110 Conn. 92, 100, 105, 147 A. 294. If the legislation is an ordinance, it must comply with, and serve the pur-

if the street area included in such subdivision and including one-half of the area of any adjacent street, exceeds 25 per cent of the total land area included in such subdivision, only street area up to such 25 per cent shall be deducted in determining 'land area devoted to dwellings.' Such subdivision development plan shall not be recommended by the Commission unless in its judgment the appropriate use of unsubdivided land within 1200 feet of such subdivision and subdivided land within 250 feet of such subdivision is fully safeguarded and such development plan is consistent with the public welfare. No certificate for the occupancy of any building or use of the premises shall be issued until all the detailed protective safeguards have been completed in accordance with said plan. In addition to notice of hearing provided by law, notice shall also be mailed to all known owners of unsubdivided land within 1200 feet of such subdivision and to all known owners of subdivided land within 250 feet of such subdivision. Such plan may be changed from time to time in accordance with the method and procedure provided by law for the adoption of these regulations."

pose of, the statute under which sanction is claimed for it. *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 440, 86 A.2d 74. When the issue whether the zoning legislation does serve the public welfare is fairly debatable, courts cannot place their judgment above that of the legislative body which enacted it. *State* v. *Hillman,* supra; *Poneleit* v. *Dudas,* 141 Conn. 413, 418, 106 A.2d 479; *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 388, 47 S. Ct. 114, 71 L. Ed. 303. The limit of the exercise of the police power is necessarily flexible. We must consider the constitutional validity of the present zoning legislation in the light of the development of the modern metropolitan area, with its growing population, its heavy traffic and the purchasing habits of its people.

It is charged specifically that § 15 of the ordinance is constitutionally invalid because it is a delegation of legislative power without proper standards to guide its exercise. Section 15 deals primarily with the power of the town plan and zoning commission to make a recommendation upon a proposed subdivision development plan. The council acts upon this recommendation. In so doing, it proceeds under the zoning ordinance and the special legislation pertaining to zoning. The standards are set forth in the special act. 19 Spec. Laws 935, § 3. The ordinance repeats these standards in its preamble, which states the authority and the legislative policy for the enactment of the ordinance. West Hartford Zoning Legislation & Regs., p. 1 (1945, as amended). "The challenge of unconstitutional delegation of legislative power is successfully met if the [ordinance] declares a legislative policy, establishes primary standards for carrying it out or lays down an intelligible principle to which the agency must conform

with a proper regard for the protection of the public interest, and affords a resort to the courts for the protection of both the public interest and private rights." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 670, 103 A.2d 535; *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586. The ordinance, when considered in its entirety, as it must be, amply meets the challenge. It contains the legislative policy and specific qualifications for the exercise of the zoning powers conferred upon the zoning authorities. *State* v. *Vachon,* 140 Conn. 478, 482, 101 A.2d 509; *Jennings* v. *Connecticut Light & Power Co.,* supra; *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 529, 107 A.2d 403. The case at bar is clearly distinguishable from *Keating* v. *Patterson,* 132 Conn. 210, 216, 43 A.2d 659. That case involved one section, relating to package stores, of regulations dealing with premises used for the sale of alcoholic beverages. These regulations established no standards whatever to govern the issuance, by the zoning board of appeals, of a certificate of approval of a location for a package store. The zoning ordinance of the town, to which the regulations were an amendment, contained a preliminary statement of purpose setting forth only that the ordinance was to promote "the health, safety, morals and general welfare of the community." This was obviously an inadequate guide. The case does not control the present one.

It is argued that § 15 is an attempt to confer upon the council power to introduce business uses into a residential zone and that therefore it does not conform to the enabling act under which the West Hartford zoning ordinance was adopted. We do not so construe § 15. As previously stated, the effect of the council's action in the case at bar was to create an entirely new business zone subject to regulations

peculiar to that type of zone. In determining whether it was the intent of the zoning ordinance that it should have this effect, we must consider it as a whole and reconcile all its provisions if that is possible. *Hutchison* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839; *State ex rel. Chatlos* v. *Rowland,* 131 Conn. 261, 265, 38 A.2d 785. The special act authorizing the council to create zoning districts states that it may divide the town into districts of such number, shape and area as may be best suited to carry out the purposes of the act, and that the regulations in one district may differ from those in another. 19 Spec. Laws 935, § 2. Furthermore, the council is authorized to amend, change or repeal regulations and zone boundaries and to provide the manner in which these things shall be done. 22 Spec. Laws 473, §§ 172, 173. Then too, § 15 specifically states that a subdivision development plan, if approved by the council, "shall be construed to modify and supplement [the] regulations as related to the land included in such subdivision." Section 15 applies with a reasonable degree of uniformity to any parcel of land in the town exceeding two acres in extent. It appears from the official zoning map that the council itself considered the approval of a subdivision development plan under § 15 as the creation of a new district. The map shows three other such districts. The key on the map bears this statement opposite the identification mark for these districts: " 'Section 15' Business." The practical construction placed over the years upon ambiguous language in legislation by those charged with its administration becomes weighty evidence of what the law is. *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 369, 114 A.2d 535; *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420;

*State ex rel. James* v. *Rapport,* 136 Conn. 177, 183, 69 A.2d 645. The business district created at Corbin's Corner by the council is in the nature of a special use district. The effect of its creation is not far different from the intended effect of the zone change involved in *Pecora* v. *Zoning Commission,* 145 Conn. 435, 437, 144 A.2d 48. For other examples of this method of zoning, see *Wolfpit-Villa Crest Assn., Inc.* v. *Zoning Commission,* 144 Conn. 560, 561, 135 A.2d 732; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 680, 136 A.2d 785. We conclude that the trial court's decision holding, in effect, that the council's action was constitutionally valid and within the power conferred by special legislation pertaining to zoning in West Hartford was correct.

It is claimed that the action of the council in approving the corporation's subdivision development plan does not accord with the comprehensive plan of the town. "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential uses of the properties." *Miller* v. *Town Planning Commission,* 142 Conn. 265, 269, 113 A.2d 504; *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 709, 88 A.2d 538. It may be found in the scheme of the zoning regulations themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173; *Miller* v. *Town Planning Commission,* supra, 269. It differs from a master plan. *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822. The basic purpose of requiring conformance to a comprehensive plan is to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power. *Miller* v. *Town*

*Planning Commission,* supra, 268; *Speakman* v. *Mayor & Council of North Plainfield,* 8 N.J. 250, 256, 84 A.2d 715. The requirement serves as an effective brake upon spot zoning.

Zoning began in West Hartford in 1924 by the authority of chapter 279 of the 1923 Public Acts. See *Mallory* v. *West Hartford,* 138 Conn. 497, 501, 86 A.2d 668. It would extend this opinion to an unwarranted length if we gave in detail the history of the development of the zoning of business districts in the town as that is disclosed in the printed record and in the large number of exhibits, including maps, minutes of hearings and council meetings, and successive versions of the zoning regulations. It suffices to say that between 1930 and 1950 the town nearly doubled in population. The zoning authorities confined business activity to relatively few locations apart from that portion of the town which lies adjacent to a heavily populated area in Hartford. With this growth of the town and the change in traffic and in the shopping habits of the people, the zoning authorities gradually eliminated the smaller business districts, which had not been used, and developed larger business districts with off-street parking. See *Mallory* v. *West Hartford,* supra, 506. This is evident from the minutes of council meetings and the amendment of zoning maps through the years. For a long time, some portion of the land at Corbin's Corner has been zoned for business. As late as 1953 the business zone there was enlarged to permit the erection of a radio station. The location is a busy one. A main highway from Hartford to Bristol, Waterbury and New Britain passes through it. The situation is closely analogous to that at Bishop's Corners, considered in the *Mallory* case, supra, wherein we upheld the substantial enlarge-

ment of a business district as within the comprehensive plan of zoning for the town. We conclude that the action of the council in the present case was in accordance with the comprehensive plan and did not constitute spot zoning. *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 125, 127 A.2d 822; *Neal* v. *Atlanta,* 212 Ga. 687, 688, 94 S.E.2d 867; note, 51 A.L.R.2d 263, 298.

It is complained that the action of the council in creating this business zone was arbitrary and unreasonable and therefore an abuse of its discretion. When zoning authorities act within their prescribed legislative powers, they have a wide and liberal discretion. Courts cannot interfere with its exercise unless it clearly appears that it has been abused. "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. The facts before the commission were such as to support, fairly and reasonably, its conclusion that the change of zone applied for would permit the use of the land for a purpose which was suitable and appropriate and would create a new zone which was in keeping with the orderly development of the comprehensive plan for the zoning of the entire town." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538; *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 431, 133 A.2d 612; *Wolfpit-Villa Crest Assn., Inc.* v. *Zoning Commission,* 144 Conn. 560, 567, 135 A.2d 732. The area here involved is located at the intersection of busy interurban highways. A portion of it has been zoned for business use for many years. It is true that the action of the council greatly enlarged the area to be devoted to that purpose. This enlarge-

ment, however, was consistent with the modern policy of establishing business zones to accommodate a variety of commercial enterprises patronized by the public and to provide adequate parking off the highway. The town plan and zoning commission and the council held lengthy public hearings. The commission, as stated heretofore, made substantial changes in the plan as originally proposed by the corporation, in order to safeguard the surrounding property owners. Buffer strips, to be planted with trees and shrubs, were provided for. It is argued that the plan was incomplete because there were no specifications for the planting of the strips and also because adequate drainage was not provided. As to the former, the plan as approved definitely shows that the planting of trees and shrubs in the buffer strips is required. As to the latter, there was a conflict of testimony at the hearings. In any event, § 15 of the ordinance requires that no certificate for the occupancy of any building or use of the premises shall be issued until the protective safeguards have been completed in accordance with the plan. The town authorities thus retain control of the situation and are enabled to protect the public interest by insisting on reasonable and proper compliance with the subdivision development plan. We conclude that the decision of the trial court holding that the council did not abuse its discretion was proper and that it committed no error in dismissing the appeal.

There is no error.

In this opinion the other judges concurred.