[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum
Serge Doyen and Virginia Williams, the plaintiffs herein, have filed an administrative appeal of the decision of the defendant Essex Zoning Board of Appeals (hereinafter "the Board") to approve the granting of a zoning permit to defendants Salvatore and Marie Sapia. The permit was for the construction of an upper story addition to their home. The principal claim of the plaintiffs is that the addition would expand the property's existing side setback nonconformity in violation of the town's zoning regulations. Trial and argument of the administrative appeal took place in this court on February 28, 2000. For the reasons stated below, the court sustains the plaintiffs' appeal and reverses the decision of the Board.
 BACKGROUND OF THE CASE
The administrative record reveals the following background of the case. The property of the Sapia defendants is located at 1 Willow Point Road in Essex. The property consists of .15 acres of land improved originally by a two story house, the first floor of which is built into a hillside. The house is within one hundred feet of a body of water known as the North Cove and is therefore within a Coastal Management District. The house was completed prior to the 1966 establishment of the Essex zoning regulations. It is now located in a Village Residence District as well as a special zone called the Gateway Conservation District.
The original house did not conform to subsequently enacted side setback regulations requiring twenty-five feet of setback. A portion of the foundation of the house, as well as an open air deck attached to the same side of the house, extends into this side setback zone. The original house also did not conform to other applicable subsequently enacted zoning regulations concerning minimum lot size and width, rear setback length, and maximum building coverage. CT Page 4864-ai
On or about March 4, 1998, the Sapias applied for a zoning permit for residential renovations, allegedly "not to exceed existing structural footprint," in accordance with submitted site drawings. Those drawings show some interior work as well as a proposed third floor addition. The proposed addition would extend out five to six feet over, but not beyond, the deck on the side of the house that already infringes upon the twenty-five foot side setback limitation. With this addition, the height of the home would become thirty-two feet measured from the lowest point of the foundation exposed to view to the highest point of the building.
The town zoning enforcement agent granted the permit on the same day of the application. The plaintiffs and others, alleging that they were abutting property owners, immediately filed an appeal to the Board. The plaintiffs claimed that the proposal authorized by the zoning permit violated a number of zoning regulations dealing with setbacks, nonconforming uses, and other matters.[1]
Substantive hearings took place on April 21 and May 5, 1998. On May 5, the Board unanimously upheld the decision of the zoning enforcement agent to grant the permit. The Board relied in part on what it found to be the consistent interpretation of the town's regulations in the past to permit vertical expansion within the horizontal footprint of a nonconforming structure. The plaintiffs filed an administrative appeal on May 20, 1998.[2]
 DISCUSSION I.
As an initial matter in an administrative appeal, the plaintiffs must establish that they are aggrieved by the decision of the administrative agency. See Northeast Parking, Inc. v. Planning Zoning Commission,47 Conn. App. 284, 287, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969,707 A.2d 1269 (1998); General Statutes §§ 8-8 (b) and 22a-43 (a). The plaintiffs testified in court that they were abutting land owners from at least the time of the Board's decision through the time of trial. There was no dispute of this testimony. The court finds that the plaintiffs have proven aggrievement. See Smith v. Planning Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987).
 II.
In challenging administrative agency action, the plaintiff ordinarily CT Page 4864-aj has the burden of proving that substantial evidence does not exist in the record as a whole to support the agency's decision. See Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). The plaintiff must do more than simply show that another decision maker such as the trial court might have reached a different conclusion. This court does not retry the case de novo. Id. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991).
In this case, the interpretation of several local zoning regulations is at issue. Although the position of the municipal land use agency is entitled to some deference, the interpretation of a municipal ordinance is nevertheless a question of law for the court. Northeast Parking, Inc.v. Planning Zoning Commission, 47 Conn. App. 284, 291, 703 A.2d 797
(1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). The court is not bound by the legal interpretation of an ordinance by a zoning commission. Id. The practical construction placed over the years upon ambiguous language by those charged with its administration does, however, become weighty evidence of what the law is. Clark v. TownCouncil, 145 Conn. 476, 485, 144 A.2d 327 (1958).
 A.
The plaintiffs make three claims of error. The principal claim is that the zoning regulations do not permit an owner to expand into the airspace over an existing side setback nonconformity.
The preamble to the Essex Zoning Regulations (hereinafter "Regulations") contains the following general statement concerning nonconformities:
 It is hereby declared that nonconforming uses, improvements and characteristics are incompatible with and detrimental to permitted uses, improvements and characteristics in the Districts in which they are located; they cause disruption of the comprehensive land use pattern of the Town; they inhibit present and future development of nearby properties; and they confer upon their owners and users a position of unfair advantage. It is a fundamental principle of zoning law that nonconformities are not to be expanded and that they should be abolished or reduced to CT Page 4864-ak conformity as quickly as the fair interests of the parties will permit. This principle is declared to be the intent of these regulations. It is the further intent of these regulations that existing nonconformities shall not cause further departures from these regulations and therefore the existence of any nonconformity anywhere in the Town shall not in itself be considered grounds for the grant of a variance in respect of any other property.
Regulations § 10B. The Regulations further provide that:
 No use of any land or improvement having a nonconforming characteristic, and no improvement having a nonconforming characteristic, shall be enlarged, extended, or expanded except in conformity with these Regulations.
 No nonconforming use or characteristic of any land or improvement shall be enlarged, extended, or expanded.
Regulations § 50D.
The Sapias' house is nonconforming because, among other reasons, it violates the requirement of § 60B of the Regulations that buildings in a Village Residence District have a side setback of at least twenty-five feet. Additional rules concerning setbacks, applicable to the entire town, are found in § 40I of the Regulations. Section 40I.1 provides as follows:
 Except as otherwise prescribed in 40I.2, required setbacks shall be open and unobstructed to the sky, except for the ordinary projection, not exceeding 2 feet of windowsills, beltcourses, cornices, eaves, chimneys and other architectural features of the building for which such setbacks are required and except for trees and shrubs. No land shall be included in computing the required setback or other open space of more than one building.[3]
The requirement that setbacks "shall be open and unobstructed to the sky" essentially adds a vertical component to the setback regulation. This requirement means that the setback space not only includes the CT Page 4864-al square footage on the ground but also the cubic space from the ground up. In short, § 40I.1 makes the setback space three dimensional.
Construction of the proposed addition over the open air deck intruded into this setback space. Although the addition did not increase the horizontal dimension of the setback nonconformity, it expanded the nonconformity by rendering the side of the house in the setback area no longer "open and unobstructed to the sky" in violation of § 40I.1. Such expansion into the setback zone was therefore in derogation of the provisions of § 50D that mandate that "[n]o nonconforming characteristic of any . . . improvement shall be enlarged, extended or expanded."
The defendants essentially argue that § 40I.1 does not apply at all when, as here, the setback zone is already compromised at the ground level. This interpretation of the Regulations, while plausible, does not comport with public policy concerning nonconforming uses. "The accepted policy of zoning . . . is to prevent the extension of nonconforming uses."Hyatt v. Zoning Board of Appeals, 163 Conn. 379, 384, 311 A.2d 77 (1972). The Essex Regulations, quoted above, strongly reinforce this policy. Regulations §§ 10B and 50D. In view of this policy, this court should not favor an interpretation of the Regulations that would, at the least, not reduce a nonconformity and, at the most, expand a nonconformity. This approach seems especially valid in a case such as the one here, in which the house is nonconforming in many dimensions.
The defendants rely partly on the fact that the Board has consistently interpreted the Regulations to permit vertical expansion of a nonconforming building as long as the expansion does not violate the height requirements of the Regulations or exceed the horizontal footprint of the building. The Board's consistent position in interpreting its regulations is clearly entitled to some deference. See Clark v. TownCouncil, supra, 145 Conn. 485; Northeast Parking, Inc. v. Planning Zoning Commission, supra, 47 Conn. App. 293. However, there is no evidence that the Board has taken the import of § 40I.1 into account in its practice. Thus there is no specific interpretation of § 40I.1 to which this court should defer.[4]
The defendants also rely on two cases holding that vertical expansions, including a second story addition, do not violate horizontal setback regulations. See In re Yocum, 393 Pa. 148, 141 A.2d 601 (1958); Jachym v.Planning Zoning Commission, Superior Court, judicial district of New London, Docket No. 522367, 8 CONN.L.RPTR. 77 (Dec. 16, 1992). In neither of these cases, however, was there a regulation similar to § 40I.1 CT Page 4864-am mandating that setbacks "shall be open and unobstructed to the sky." Given § 40I.1, the defendants' interpretation cannot stand.
 B.
The plaintiffs also argue that the proposed addition violates the applicable height limitation in the Regulations. They contend that the thirty-two foot height of the building as modified exceeds the thirty foot limitation of Regulation § 60B for buildings in a Village Residence District.
The Board rejected this claim, finding that the thirty-two foot height of the house with the proposed modification, as measured from the lowest point of the foundation exposed to view to the highest part of the building, would not exceed the limitation in § 40J of the Regulations. Section 40J, in pertinent part, provides as follows:
 The height improvement shall be measured vertically from the average ground level at the base of a structure to the average roof height. Ten percent (10%) of an improvement's footprint may exceed the height limitation, but shall not exceed 45 feet in height . . .
 EXCEPTION: Anything to the contrary in these Regulations notwithstanding, within a Gateway Conservation District, the height of an improvement shall be defined as the vertical distance between a horizontal plane drawn through the lowest point of a building or structure which is visible above grade and its uppermost point, excluding chimneys.
 No building or other structure shall be constructed, reconstructed, enlarged, extended, moved or structurally altered in such a manner as to exceed a height of thirty-five feet or contain more than two stories and an attic above grade . . .
Regulations § 40J. Both parties agree that the thirty-five foot limitation stated in this Regulation constitutes part of the "Exception" and is thus presumptively applicable to the Gateway Conservation District.[5] The plaintiffs, however, maintain that, when a property is located in both a Village Residence District and the Gateway Conservation District, the more restrictive thirty foot limitation of a Village Residence District applies. CT Page 4864-an
Section 30A of the Regulations divides the Town into a number of districts, such as the Village Residence District, Residential Life Care District, Essex Village District, and Commercial District. Most of these districts have their own building height limitations, along with other required characteristics such as setback length. See, e.g., Regulations § 60B (Village Residence District); § 63B.1 (Residential Life Care District); § 70B (Essex Village District); § 80C (Commercial District). The Gateway Conservation District "is in addition to and superimposed upon those districts into which area is divided under Section 30A." Regulations § 30A.1. It is thus clear that the Gateway Conservation District is a special designation that more specifically defines a district created by the general division of the Town. Following the rule that a specific provision prevails over a more general one, seeState v. State Employees' Review Board, 239 Conn. 638, 653, 687 A.2d 134
(1997), this court finds that the Gateway height limitation of thirty-five feet supercedes the general thirty foot limitation in a Village Residence District. The Board thus correctly found that, in making the defendants' home thirty-two feet high, the proposed modification did not violate applicable zoning regulations.
 C.
Finally, the plaintiffs contend that the Sapias failed to comply with a requirement to submit a coastal site plan review. Section 102A of the Regulations provides that all buildings, such as the defendants' home, fully or partially within the coastal boundary are subject to the coastal site plan review requirements of General Statutes §§ 22a-105 to 22a-109. Section 102B(2) creates an exemption for "[m]inor additions to or modifications of existing buildings . . ." The Board found that the proposed additions were minor and therefore exempt from the site plan requirement. The Board based its finding on testimony that the proposed addition had no impact on coastal resources and that the zoning enforcement officer had granted permits in the past in apparently similar situations without requiring submission of a coastal site plan. There was thus substantial evidence to support the Board's finding. Accordingly, this claim does not afford a ground for reversal of the Board's decision.Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587.
 CONCLUSION
For the foregoing reasons, this court sustains the plaintiffs' appeal. The decision of the Board denying the appeal of the plaintiffs is CT Page 4864-ao reversed.
SCHUMAN, J.