[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Gregory E. Wronski, Vicki Wronski, Stephen D. Harter and May M. Harter, appeal from a decision of the defendant Woodbury Zoning Commission, approving a zone change of a twenty-six acre parcel of land from an open space residence district (OS-100) to a garden apartment district.
On August 9, 1999, the defendant Harold Cole, owner of a 56.29 acre parcel of land located on Route 6 and designated as Map 25/Lot 13G, filed a petition with the defendant Woodbury Zoning Commission seeking a zone change of the parcel from OS-100 to garden apartment. (Return of Record [ROR], Exhibit A: Item 1.) Additionally, Cole petitioned the commission to designate the parcel as an elderly housing overlay district. (ROR, Exhibit A: Item 1.)
At the public meeting held on September 14, 1999, the zoning commission heard testimony from the general public regarding the proposed zone change, including testimony from Cole, his project manager, a realtor and an environmental engineer retained by Cole. (ROR, Exhibit B: Item 2; ROR, Exhibit C: Item 1.) The public hearing was then reopened at a commission meeting on September 28, 1999. (ROR, Exhibit B: Item 3; ROR, CT Page 1738 Exhibit C: Item 2.) The public hearing was again reopened at a commission meeting on October 12, 1999. (ROR, Exhibit B: Item 4; ROR, Exhibit C: Item 3.) At the commission meeting on November 9, 1999, the commission members discussed their thoughts regarding a site walk of the subject parcel. (ROR, Exhibit B: Item 5.) On November 23, 1999, the zoning commission approved Cole's petition and rezoned 26 acres of the 56.29 acre parcel from OS-100 to a garden apartment district without the elderly housing overlay. (ROR, Exhibit B: Item 6.)
The plaintiffs now appeal from the commission's decision to the Superior Court on the grounds that the commission's approval was "arbitrarily illegal and an abuse of . . . discretion" because the petition was not in compliance with the Woodbury plan of conservation and development, the zone change is against "sound public policy," and the zone change constitutes spot zoning and an improper use of the land. (Appeal, ¶ 10.) The plaintiffs seek, as relief, that this court "sustain the appeal and . . . reverse the decision of the [commission]." (Appeal, Prayer for Relief, ¶¶ 1-3.) Additionally, the plaintiffs pray that this court allow for costs and other appropriate relief. (Appeal, Prayer for Relief, ¶¶ 2, 3.)
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama, Inc. v. Zoning Board of Appeals, 195 Conn. 276,283, 487 A.2d 559 (1985). "Failure to comply strictly with the provisions of § 8-8(b) renders the appeal subject to dismissal." Spicer v.Zoning Commission, 212 Conn. 375, 378, 562 A.2d 21 (1989).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's [administrative] appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). It is necessary, therefore, that "in order to have standing to bring an administrative appeal, a person or entity must be aggrieved." (Internal quotation marks omitted.) WaterPollution Control Authority v. Keeney, 234 Conn. 488, 493, 662 A.2d 124
(1995). Statutory aggrievement under General Statutes § 8-8 (a) provides that "a person who owns land that abuts or is within a radius of 100 feet of the land involved in the board's decision is considered automatically aggrieved." Jolly, Inc. v. Zoning Board of Appeals, supra, 189-90.
The plaintiffs allege that they have been aggrieved "by the decision of CT Page 1739 the [commission] because they own and occupy property abutting the subject matter property, and because the decision of the [commission] will detrimentally [affect] the value of their property, the safety and quality of life in the neighborhood, and the plaintiffs' ability to use and enjoy their property." (Appeal, ¶¶ 11, 12.) Since they are abutting land owners, this court finds that the plaintiffs are aggrieved.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e).
The plaintiffs allege that "[n]otice of the decision of the Zoning Commission was published in the Voices newspaper on December 1, 1999." (Appeal, ¶ 9.) This allegation is substantiated by a copy of the notice of the decision, as published in Voices on December 1, 1999, contained in the record. (ROR, Exhibit F: Item 2.)
On December 10, 1999, this appeal was commenced by service of process on the chairman of the Woodbury Zoning Commission and upon the assistant town clerk of the town of Woodbury. Therefore, the court finds that this appeal was commenced in a timely fashion by service of process upon the proper parties.
"The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." (Internal quotation marks omitted.)Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1039 (1988). "[W]here a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . .Furthermore, [t]he zone change must be sustained if even one of the stated reasons is sufficient to support it." (Citations omitted; internal quotation marks omitted.)Christian Activities Council, Congregational v. Town Council,249 Conn. 566, 584, 735 A.2d 231 (1999).
"Under this traditional and long-standing scope of review, the proper CT Page 1740 focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Caserta v. Zoning Boardof Appeals, 226 Conn. 80, 87, 626 A.2d 744 (1993). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995).
 DISCUSSION
I. Whether the application for a change of use district was incomplete so as to deprive the commission of jurisdiction
In their memorandum, the plaintiffs argue that the commission did not have jurisdiction to approve the zone change because Cole's application was incomplete. The plaintiffs argue, in part, that the application lacked a proper class A-2 survey depicting the 26 acres to be changed, that the submitted site plan is not an A-2 survey, and that the legal description of the property is for the full 56.29 acres and not for the 26 acre parcel subject to the zone change.
In response, the defendant argues, without legal support, that "[m]inor technical omissions, such as those alleged by the plaintiffs, do not generally deprive a zoning commission of its jurisdiction to take a particular action." (Brief of defendant Woodbury Zoning Commission, p. 17.) The defendant also argues that both maps submitted by Cole "adequately depicted the characteristics of the Subject Parcel and sufficiently informed the Commission and the public as to the nature of the land in question." (Brief of defendant Woodbury Zoning Commission, p. 18.)
In order to establish, change or eliminate a use district in the town of Woodbury, the applicant's petition must meet certain criteria.[1]
(ROR, Woodbury Zoning Regulations § 11.8.) The applicant, Cole, submitted two maps along with the petition for the change of zone. One map is a certified class A-2 survey map depicting the 56.29 acre parcel. (ROR, Exhibit H(1).) This A-2 survey map, as submitted by Cole, was originally prepared for the estate of Ralph Talarico and therefore predates November 29, 1983, the date when Cole purchased the property. The A-2 survey also fails to show "in reasonable detail the topographic and land characteristics of the area referred to in the petition." (ROR, Woodbury Zoning Regulations § 11.8(b).) The A-2 survey depicts the boundaries of the 56.29 acres and surrounding property owners, but fails to show any topographic characteristics of the parcel as required by § 11.8 of the regulations. The A-2 map also fails to show the boundaries or legal description of the approved 26 acre parcel thereby CT Page 1741 causing uncertainty as to which specific portion of the property was approved for the zone change.
The second map submitted by Cole, labeled as "Conceptual Site Layout of Nonnewaug Overlook Garden Apartments," depicts the 56.29 acre parcel divided into several lots. (ROR, Exhibit H(2).) The map also includes topographical characteristics, the proposed residential structure, septic fields and wells. According to the map, the proposed structure itself is situated on a 23 acre parcel. Because the commission approved the zone change for a 26 acre parcel, this court questions the discrepancy between the maps and the commission's decision.[2]
In addition to the criteria set forth in § 11.8, § 5.5.1(c) of the regulations requires that "[t]he application for zone change [to an elderly housing overlay district] [is] accompanied by applications for a Special Permit and Site Development Plan." When applying for a special permit, the regulations require that the applicant submit four copies of a written statement describing the proposed use, and four copies of detailed plans of the proposal, including four copies of preliminary architectural plans, four copies of a general location map and an interior floor plan. (ROR, Exhibit I: Woodbury zoning regulations §§ 10.2.1 — 10.2.2.) Because Cole failed to submit special permit and site development plan applications as required by § 5.5.1(c), his application for a change of use district from 0S-100 to garden apartment with an elderly housing overlay is incomplete under the town's zoning regulations.
The issue of whether a zoning commission may approve an application for a zone change that fails to conform with the zoning regulations of the town has yet to be addressed by our courts. Generally, "[w]hen reviewing the actions of the commission to determine if its findings complied with the standards set out in the regulations, we are not compelled to indulge in a microscopic search for technical infirmities. . . . The determination of what the public interest requires is in the discretion of the commission." (Citations omitted.) McCrann v. Town Plan ZoningCommission, 161 Conn. 65, 71, 282 A.2d 900 (1971) (questioning the adequacy of a site plan application under town zoning regulations).
In DeAngelis v. Waterbury Inlands Wetlands Watercourses Commission, Superior Court, judicial district of Waterbury, Docket No. 132755 (May 16, 1997, Pellegrino, J.), however, the court held that "a special permit application and site plan must be in substantial compliance with the applicable regulations. . . . Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. What constitutes a substantial compliance is a matter depending on the facts CT Page 1742 of each particular case." (Citations omitted; emphasis added.) AlthoughDeAngelis v. Waterbury Inlands Wetlands Watercourses Commission does not address whether an application for a zone change must substantially comply with town zoning regulations, it is nonetheless helpful for purposes of this analysis because Woodbury's zoning regulations require that an application for a change to an elderly housing overlay district include applications for a special permit and site development plan.
The purpose of Cole's application was to change the use district of his parcel from 0S-100 to a garden apartment district with an elderly housing overlay. Cole failed to submit a properly certified class A-2 survey pursuant to § 11.8 of the regulations, and he also failed to submit applications for a special permit and site development plan. Such inadequacies do not constitute miniscule technical infirmities and, therefore, Cole was not in substantial compliance with the zoning regulations. In light of the foregoing, the court finds that the commission abused its discretion in approving the zone change.
II. Whether the record supports the commission's decision
Despite the fact that it has been determined that the commission abused its discretion in approving the zone change, the court is nevertheless compelled to address whether the record supports the commission's decision. As discussed above, "our case law clearly requires the trial court, in appeals from planning and zoning authorities, to search the record to determine the basis for decisions made by those authorities." (Internal quotation marks omitted.) Paige v. Town Plan ZoningCommission, 235 Conn. 448, 464, 668 A.2d 340 (1995). "[W]here a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) Christian Activities Council, Congregationalv. Town Council, supra, 249 Conn. 584. "In appeals from administrative zoning decisions . . . the decisions will be invalidated even if they were reasonably supported by the record, if they were not supported by `substantial' evidence in that record." Kaufman v. Zoning Commission,232 Conn. 122, 151, 653 A.2d 798 (1995).
This court is required, therefore, to search the record in order to determine whether the grounds set forth by the commission in their approval of the zone change is supported by "substantial evidence" contained in the record. The commission sets forth three reasons for changing the zone from OS-100 to a garden apartment district. First, the commission stated that "the proposed change . . . will be consistent with the Town Plan of Conservation and Development." (ROR, Exhibit B: Item 6.) CT Page 1743 Second, the commission stated that "the proposed change . . . will permit the development of multi-family dwellings, thereby diversifying housing stock in the Town." (ROR, Exhibit B: Item 6.) Finally, the commission stated that "the proposed change . . . will not be incompatible with existing commercial and residential uses of property in the area." (ROR, Exhibit B: Item 6.)
There is no evidence contained in the record that would support the commission's approval of the zone change to a garden apartment districtwithout the elderly housing overlay. With respect to the first reason set forth by the commission, there is no evidence that the change to the garden apartment district without the elderly housing overlay was in compliance with the town plan of conservation and development. Again, the record is devoid of any evidence that would support the commission's reasoning that the zone change without the elderly housing overlay will diversify the housing stock in town. The record does not provide any substantial evidence to support the commission's decision to change the zone from 0S-100 to a garden apartment district without the elderly housing overlay as initially requested.
III. Whether the commission's decision constitutes spot zoning
The plaintiffs additionally argue that the actions of the commission in approving the zone change constitute spot zoning. "[S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood." (Internal quotation marks omitted.) Blaker v. Planning Zoning Commission, 212 Conn. 471, 483,562 A.2d 1093 (1989). "Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." Id.
Whether a twenty-six acre parcel is considered small for the purpose of a spot zoning analysis is a subjective question. Our appellate courts have yet to establish a standard so as to guide the judiciary in determining whether a parcel of land is a "small" area of land for purposes of such an analysis. In Thompson v. Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 494184 (January 11, 2000, Mottolese, J.), the court stated, without any further discussion, that a 6.5 acre parcel is considered small. In Goyette v.Lebanon Planning Zoning Commission, Superior Court, judicial district of New London at Norwich, Docket No. 112654 (January 21, 1999, Purtill,J.T.R.), however, the court held that a 22.73 acre parcel did "not appear to be such a small area as to require a finding of spot zoning." InUnited Aluminum Corp. v. North Haven Planning Zoning Commission, CT Page 1744 supra, Superior Court, judicial district of New Haven at New Haven, Docket No. 369368 (July 20, 1995, Booth, J.), the court noted that a 200 foot by 150 foot parcel of land was relatively small and it was being "added to a significantly larger portion of similarly zoned residential property." The court further noted that "[i]n all probability if the parcel in question were surrounded by property zoned differently from it, a parcel of this size would constitute spot zoning." Id.[3]
Because existing case law provides no guidance as to whether a 26 acre parcel is "small" for the purposes of spot zoning, the court must exercise its discretion in deciding the issue. The court considers the fact that the surrounding OS-100 district is a much larger size and there are no other differently zoned districts within close proximity to the subject parcel. In comparison to the surrounding district, the 26 acre subject parcel constitutes a "small" piece of land for purposes of this analysis.
Further, the court must then determine whether the zone change comports with Woodbury's comprehensive plan. Generally, "[a] comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential uses of the properties. . . ." (Internal quotation marks omitted.) Stiles v. TownCouncil, 159 Conn. 212, 268 A.2d 395 (1970). "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves." (Internal quotation marks omitted.) Protect Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning and Zoning, 220 Conn. 527, 551,600 A.2d 757 (1991). "The basic purpose of requiring conformance to a comprehensive plan is to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power." Summ v. Zoning Commission,150 Conn. 79, 88, 186 A.2d 160 (1962).
In its approval of the zone change, the commission stated that the change was in conformity with the town plan of conservation and development. (ROR, Exhibit B: Item 6.) While several trial court decisions have used the terms "comprehensive plan" and "development plan" interchangeably, the two terms are not synonymous. In Clark v. TownCouncil, 145 Conn. 476, 144 A.2d 327 (1958), the court explained that a town master plan differs from a comprehensive plan in that the comprehensive plan is to "be found in the scheme of the zoning regulations themselves." Id., 486. In Goyette v. Lebanon Planning Zoning Commission, supra, Superior Court, Docket No. 112654, the court compared the plan of development with the comprehensive plan and emphasized that "[t]he plan of development is not the same as the comprehensive plan. The plan of development is prepared by the Commission in its planning capacity under the provisions of General Statutes § CT Page 17458-23. It is a plan containing recommendations for future development of the municipality and is advisory only as to the zoning decisions of the Commission." Therefore, the town of Woodbury's plan of conservation and development is merely advisory and is not the comprehensive plan for the purposes of a spot zoning analysis.
In order to determine whether the commission complied with the comprehensive plan, it is necessary to determine whether the reasons set forth by the commission benefits the public at large and not just the owner. "Although the petitioner may receive an incidental benefit, so long as the change is in accordance with the comprehensive plan and the central purpose for the change is in benefiting the community as a whole as opposed to the owner of the property, the board cannot be said to have acted unreasonably or arbitrarily and the claim of spot zoning falls."Morningside Assn. v. Planning Zoning Board, 162 Conn. 154, 162,292 A.2d 893 (1972).
As discussed above, the commission gives three reasons for approving the zone change from an 0S-100 district to a garden apartment district. While the reasons set forth by the commission may, under ordinary circumstances, satisfy the town's comprehensive plan by benefiting the entire community, there is no evidence in the record to indicate why the commission approved the zone change without the elderly housing overlay. The record reflects that Cole sought to develop this property for elderly housing based on the growing demand for such housing and the long waiting lists at nearby elderly residences. (ROR, Exhibit C: Item 1, p. 5.) The record also reflects in numerous instances, that Cole always intended to develop elderly housing on the subject property. First, the record shows that Cole considered the fact that the "parcel is only about a mile and a half from Emergency Services, which [he] felt was important for development especially with the elderly." (ROR, Exhibit C: Item 1, p. 7.) Second, the commission chairman, Arthur M. Moody, states that "[w]hat the commission is focusing on now is whether we should change the zone to Garden Apartment with an elderly overlay." (ROR, Exhibit C: Item 2, p. 6.) Finally, a representative for Cole stated that "[Cole's] projects supports his retirement objectives, but he has also done everything he can think of to understand and support town goals by also contributing to the resolution of a need for elderly housing in town." (ROR, Exhibit C: Item 3, p. 8.)
Because "a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves"; (internal quotation marks omitted)Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning and Zoning, supra, 220 Conn. 551.; a thorough examination of the zoning regulations of the town demonstrates that the zone change is not in harmony with the comprehensive plan. The general purpose of the CT Page 1746 Woodbury zoning regulations is, in relevant part, to "prevent undue concentration of populations [and] to lessen congestion in the streets." (ROR, Exhibit I: p. 1-1.) Under § 5.4.1 of the town zoning regulations, "[m]ulti-family dwellings [in a garden apartment district] are declared to constitute a special use in Woodbury, which is subject to the granting of a Special Permit and the approval of a Site Development Plan to insure a compatible relationship between such use and theexisting pattern of land use in Woodbury." (Emphasis added.)
The commission failed to consider the purpose of the zoning regulations and the purpose of a garden apartment district in approving the zone change without the elderly housing overlay. The approval without the elderly housing overlay would add a more concentrated population because of the ability to construct numerous multi-family dwellings without the restrictions afforded by an elderly housing overlay. Furthermore, there is little evidence in the record that the commission considered traffic implications with or without the elderly housing overlay. Finally, the commission stated in its approval that it sought to diversify the housing stock in town by approving the zone change to a garden apartment district. There is nothing in the zoning regulations to support the rationale that the zone change would diversify the housing stock in Woodbury. Because the reasons provided by the commission in their approval are unsupported by the zoning regulations of the town, it is difficult to conclude that the decision complies with the comprehensive plan of the town.
The approved zone change from OS-100 to garden apartment district without the elderly housing overlay does not comply with the town's comprehensive plan. The decision of the commission, therefore, constitutes spot zoning.
 CONCLUSION
For the foregoing reasons, the court sustains the appeal.
SANDRA VILARDI LEHENY, J.